Judge Marshall
delivered the opinion of the Court.
The last will of Henry Coleman, who- died about the commencement of the year T808, contains the following clauses: — “Imprimis, my will and desire is, that my wife “ Mary shall have possession- of all my estate, both real “ and personal, during her widowhood, or natural life, “ for the purpose of supporting herself and the children, “ except such exceptions as- I shall hereafter herein “ make.” The testator then makes various specific bequests and devises to his-daughters &c, and proceeds: — • “ Item, I give and bequeath to my two sons, William “ and Edward, all mylands, improvements, mills, houses “ and lots &c. to- be divided between them in the follow- “ ing manner. It is my will and desire, that my son Ed- “ ward shall have the preference of the place where he “ now lives, and the mill,-and the dwelling house where I “ now live, with the improvements thereto pertaining. My “ son William to have am equal value in my other landed “ property. But as I consider my landed property too- “ valuable to two children, my will and desire is, that “ my said two sons, William and Edward, shall pay to “ my executors the sum of £100 each, to be equally di- “ vided between all my daughters. The said money “ to be paid after they get possession of the property, “ after the death of my loving wife Mary.” — “ Item, “ upon the death or intermarriage of my loving wife “ Mary, my will and desire is, that all the rest and res- “ idue of my personal estate shall be equally divided “ among my children, share and share alike.”
The two sons, William and Edward Coleman, and a son-in-law, William Moore, were named as executors in the will, but only the two last appear to have acted as such.
*399 Mary Coleman, the widow of the testator, survived 'him twenty years, and died, at a very advanced age, in 'the year 1828. She occupied until her death, the farm on which her husband had died, consisting of upwards •of a hundred acres of improved land, which was part of a ‘1 arger tract of about eight hundred and thirty or forty acres. Within this larger tract, William and Edward Coleman •were, at the death of their father, in the occupancy of small improvements, which they continued to occupy and enlarge at their discretion.
The testator left six daughters, some of whom were ■unmarried, and continued to live with their mother for some time. Two of them died without children.
In 1826, William Coleman filed his bill in Chancery, against Mary and Edward Coleman, alleging that the former, being incapable of managing the property left in her possession, had entrusted it principally to Edward Coleman, and had given him, or allowed him to ■take, for a number of years, all the profits of the estate, to which, as the complainant claimed, the other children of the testator were equally entitled. He therefore prayed an account &c. and by an amended bill, prayed that a receiver might be appointed. Upon the death of Mary Coleman, other amended bills were filed, praying for a division of the land, and also for a settlement and distribution of the personal estate which had come td the hands of the executors of Henry Coleman, upon his ■death, and of that which had come to their hands, or to the hands of Edward Coleman, as executor of Mary Coleman, at her death.
To these bills, William Moore, the other executor of Henry Coleman, and all the legatees, or their representatives, were made parties.
The legatees united in the various prayers of the complainant, except as to the division of the land, with which they had nothing to do; and also prayed, by way of cross bill, that the complainant might be decreed to pay to them, or to the executors of Henry Coleman for them, the sum of £100, as directed by the will; and they admitted that Edward Coleman had paid them their respective portions of the same sum'due on the same account.
*400 'The executors of Henry Coleman averred, in their answers, and satisfactorily proved, that they had properly disposed of so much of his estate as had come to their hands before the death of Mary Coleman, and that the same had been formerly adjudicated in a suit between the parties. And Edward Coleman averred that, as executor of Mary, and as surviving executor of Henry Coleman, he was in the course of making proper distribution of so much of the estate as remained at her death; and that the complainant had purchased, at the -sale of the estate, more than the value of his share, and given his note therefor, which was still unpaid. The defendant Edward Coleman also averred, that he had received no part of the profits from the portion of the estate which was in the possession of his mother, either by gift or otherwise, exeept a small sum annually for such •attention as he was required to bestow upon her business. In which statement Mary Coleman also concurred, in an answer filed before her death. And both contended, that she was not subject to account, and that in fact, she had made nothing more -off of the farm, for many years, than was sufficient to support herself and the negroes; of which there were several growing families. And it appears, that she had, in fact, made some -small distribution of money or property among her children, some years after her husband’s death.
The only obstacle to a division of the land by consent, appears to have arisfen from the fact, — that an ejectment having been brought for a part of the land, which Edward Coleman had occupied, and a judgment obtained therefor, he was turned out of possession by a habere facias, and being thus evicted, purchased the land from the successful claimant, and received a conveyance for it to himself. He contends, that this portion of the land should not be brought into the division, while William -claims that it should be included, and proposes, in his pleadings in the suit, that he shall be permitted to pay to Edward one half of the purchase money which he gave for it; and he further claims, that, on account of this diminution of the land, there should be a corresponding *401 diminution of the sum of £100, which he and Edward were required to pay to the testator’s daughters.
Interlocutory order and final decree of the Circuit Court.
The negroes remaining at the death of Mrs. Coleman, were divided without suit.
The Circuit Court directed a division 'of -the land, exclusive of that portion which had been lost by an adverse claim and purchased by Edward Coleman, and also directed an account to be taken, and a division made, of the personal estate which had come to the hands of the executor (Edward) after the death of Mary Coleman, exclusive of that which had come to the hands of himself and his co-executor, Moore, upon the death of Henry Coleman; -and the Court being of opinion, that Edward Coleman had received nothing from his mother, as the proceeds of -the farm occupied by her, directed no account in relation thereto.
On final hearing, the partition of the land, as made under the interlocutory decree, was confirmed, and conveyances directed. The account and settlement of the personal estate, made under the same decree, were approved; and Edward Coleman was decreed to pay to the several legatees the sums reported to be due to them, so far as it did not appear that they had already been paid. It appeared, however, from the report, that the note of William Coleman to the executors of his father, for purchases made at the sale of the personal estate, after his mother’s decease, exceeded the amount to which he was entitled, and the note was directed to be credited by that amount. The bill of the complainant was thereupon dismissed as to the defendant Edward, -with costs, except the costs of the partition, which were divided. The bill was also dismissed as to the other defendants. And the -Court proceeded to decree in relation to the sum of £100, prayed for in the cross bills against William Coleman: that, two of the testator’s six daughters having died without -children, since his death^whereby their interest in the said sum of £100 descended to their surviving brothers and sisters, six in number, William, as one of them, was entitled to two sixths of the £100, leaving £66 13s. Ad. to be *402 equally divided among the four surviving daughters, or their children; and he is decreed to pay one fourth of that sum to each, a lien being reserved upon the land allotted to him, to secure the payment.
f©pinion"fhat ES. C. did not obtain any undue share of the profits of the estate while it was occupied by his mother; so the question of her right to dispose ■of the profits,un<der the wili, does •not arise.
Against this decree and every part of it, William Coleman complains; and we shall proceed very briefly :to notice those points only, which we deem it material 'to decide.
First. With regard to the current proceeds of the farm, occupied by Mrs. Mary Coleman, after her husband’s death, we are of opinion, with the Circuit Court, that the proofs taken, in connection with the answers of Mary and Edward Coleman and the exhibits of the latter, are insufficient to establish the charge in the bill that Edward Coleman did receive an undue portion. It appears, indeed, that scarcely any thing had been added •to the personal estate, except by the natural increase of the slaves, during the life of Mrs. Coleman; and it also 'appears, that if the farm and negroes had been managed with constant energy and skill, something considerable might have been accumulated during the twenty years that she occupied the farm. But it does not appear, that it was so managed by her; or that, for many years before her decease, she had any thing further in view, than merely to live in comfort, and take care of the negroes, which, on her death, were to pass to her children. The question whether, under the clause of the will by which the possession is devised to her for the support of herself and children, the proceeds beyond what was expended in her own comfortable support, were absolutely hers, or subject to any partial appropriation she might choose to make, does not arise in the case. For be this as it may, there does not appear to have been, in fact, any such surplus proceeds, and there were no means, after her death, of creating them, or of rendering any one accountable for their non-existence. Edward Coleman’s occasional superintendence or assistance, when required, certainly did not make him responsible. The complainant, therefore, was entitled to no relief on this ground.'
The executors of Henry Coleman had properly distributed his estate before this suit, and no ground of. complaintonthat: score. And— William had received more than, his share, and had, no cause to sue..
if one tenant- in* “drerse"^"™ to-the land, the purco-tena^'also0' and he is bounddueproporüon'óf the purchase mo-the land" or part' ¡t> tis actually lost,, by an adverse title, and: th? tenants are-tenancy ceases,. ^¿buystheloS land,tbepurchase ^nefit" The joint right against their vvarrantor, may still* exist, matured by the eviction, antfunaffected by the-“^grchase’b^’
Second. The estate of Henry Coleman, which came to the hands of his executors, in the first instance, was fully administered long before this suit was brought, by the payment of debts, by partial distribution, with the assent of Mrs. Coleman, and by payment of the balance to her: of all which the complainant was well apprised, as there had been one or more suits in relation to it,, in which he had an active participation; and he had no right to a decree on this score.
Third. He had received more than his full portion of the personal estate, as it was left at the death of Mrs. Coleman; and there was no need of his coming into Chancery to procure a credit on his note given to the executors. The executor was always willing to give such credit to the amount of his share in the estate, and the note seems to have been held as evidence that he had. received so much.
Fourth. The only remaining ground of relief against Edward Coleman, relates to the division of the land,, and the question tobe decided, is, whether that portion of it which had been lost by reason-of an adverse claim, and purchased by Edward, and conveyed to him, should be considered as purchased for the common benefit, and be therefore held subject to the division,.upon William Coleman’s paying one half of the purchase money withinterest. If Edward- Coleman had, without any eviction-, , , . . . .. ,. purchased m- a paramount claim covering a portion ot the land, the purchase would, undoubtedly, have enured to the benefit of William Coleman, who was tenant in common and residuary devisee with him, and William would have been compellable to- make contribution, as decided at this term, in the case of Venable vs. Beauchamp, (ante, 321;) Vanhorne vs. Fonda, 5 Johns. Chy. Rep. 407.
But the principle of that case does not extend to a , . , purchase made by a tenant m common, alter eviction, The purchase of a paramount claim by one tenant in common, secures him, or perhaps both tenants, from eviction, and from the conseqent diminution of the quantity to be divided in the first instance, or to be re-divided if a partition has been once made. The purchase, being *404 thus made, while a privity exists between the parties in relation to the thing itself which is purchased, operates for the common benefit, because of that privity. But an eviction, destroys the privity between the parties as to the land evicted. They are no longer tenants in common of' that land', because it is taken by a paramount claim; and for the same reason, neither of them has any longer a joint or- separate interest in it. It belongs to another, and is taken from their common stock into the possession of. that other. And the consequence is, that their common- stock and common interest is reduced to that portion of' the land which remains. Where there is no common interest, the privity, and all consequences following fi'om i't, necessarily cease. There may be a common interest in the warranty under which they held the land, and in part on the ground of that common interest, one tenant in common is held to be prohibited from evicting the other by adverse claim, and thus producing- a breach of the common warranty. But when the eviction has actually taken place under an adverse claim, the breach of' the common warranty is complete, and this bond of fidelity does not apply to the land itself, which is no longer protected by the warranty. The right to recompense from the warrantor has become complete;- they are no longer- connected with him, or with each other, as-tenants of the land warranted; and they have a common interest only in obtaining a compensation for the loss. And as the purchase by one of them, does not affect this recompense, or the remedy for obtaining it, it does not affect any common interest, nor create any common right or advantage.
Vendee after a. vietion.may purchase a paramount title for himself; but, before eviction, the vendor also takes thebenefitofsucb purchase,.
A party filed’ a bill, on divers grounds; among the rest, for a partition of land —the only claim that he sustained, and which partition defendant was always willing to make* correctly; the bill was dismissed, with costs,except costs of partition merely, which were divided: decree approved.
*404 In analogy to this conclusion, and m support of it, we refér to the doctrine which permits a vendee, after he has been actually evicted by a paramount adverse claim, to purchase in the- paramount title for his own exclusive benefit. But if' he- purchases before eviction, the vendor as well' as himself receives the- advantage.
We- are therefore of' the opinion, that the Circuit Court properly excluded from the division so much of the land as had been recovered by adverse claim, and afterwards purchased by Edward Coleman., And as *405 William Coleman failed to establish any claim to relief against Edward, except for a mere partition, and as Edward was always willing to make the partition, on the principles which we have decided to be correct, the bill, as between them, was properly dismissed, with costs, except the mere costs of the partition, which were divided. And as the complainant made out no ground for relief on any matter set up in his bill — although it may be true, as alleged by his counsel in this Court, that all the parties interested in some of these matters were not brought before the Court by service of process, and being-infants, could not appear by guardian, without service of process — the bill was also properly dismissed as to them.
A bill may be dismissed when compl’t has failed to make out a case — tho’ there are persons interested who arenot before the Court.
Land is willed to dhbn^h’a^they pay £100 to the uteian^^slost^y g¿ad^1^claima proportionate reduction of the cided— as com-pi^nayt, by an error m computing a share to ^Ued^i^anotherbranch of the espaaymentaofmOTe than the redue- ^and^some who are interested in not before the Court.
infant heirs must be summoned.-chancery dies, ypUmat serving his infant heirs with process, a §ua''dia» ad k-fem ls appointed* who answers, y makes the answer a crossbill; on which there is a decree in favor of the infants and others: held, that the decree is erroneous, as the infants were not properly before the Court, though necessary parties, 0
Fifth. With regard to the £100: it is contended, that this sum should be diminished in proportion to the diminution in the quantity of the land, by the recovery of a part of it under an adverse claim; and that therefore, the decree is erroneous in not making an abatement of the sum on that account. If this were conceded, it is still very probable, if not certain, that the sum decreed agamst him is too small, as he is credited, m consequence of the death of his two sisters, with two sixths of the . . -ip, sum of £100, instead ox two sixths of one sixth of that sum: that is, he gets a credit of one third, instead of one eighteenth, part of £100; which is more than the proportional abatement for the loss of the land. But it would be improper to decide, and we do not decide, whether he is entitled to any abatement of the £100, on account of the diminution of the land; because the parties in whose favor the decree on that part of the subject was rendered, were not properly before the Court. Caty Miller, one of the daughters of the testator, was made a defendant to the bill praying for an account and distribution of the personal estate, but died before service of process, leaving infant children. Without the \r -,- .... service of process upon them, a guardian ad litem was appointed, who answered the bill, and making the an-x -1 70 *406 swer a cross bill, prayed that the complainant might be-decreed to pay to them their part of the £100. And upon this, the other defendants who were entitled, having made similar prayers, the decree as to this matter was rendered.. No decree could properly have been rendered in favor of the heirs of Caty Miller, who were not before the Court; and as they were necessary parties as to this part of the- subject, no relief should have been decreed as to the £100. The decree, to that extent, is erroneous; and the cross bills of the other defendants, so far as they relate to the payment of the £100, should have been dismissed without prejudice. But this error does not affect the case upon the original bill, as the complainant showed himself entitled to no part of the personal estate, in which alone these parties were interested; and although it may affect the decree upon the cross, bills against Edward Coleman, he does not complain of it on that score, and the complainant cannot.
Decree for costs here.
The decree against William Coleman, for parts of the £100', upon the cross bills of some of the defendants,, was therefore erroneous, and must be-reversed; but the residue of the decree is affirmed. And it is considered and adjudged, that the defendants in whose favor the-decree for parts, of said sum of £100 was rendered, pay to said William Coleman- his costs in this Court, except the cost of four fifths of the record brought up; and that said William pay to Edward Coleman, the costs of said Edward in this Court,