Hutcheson vs. Blakeman.

CASE 22————————JUNE 25.

## Hutcheson vs. Blakeman.

APPEAL FROM GREEN CIRCUIT COURT.

In creating a contract the negotiation may be conducted by letter, and the contract is complete when the answer containing a direct and unconditional acceptance of a distinct proposition is dispatched by mail or otherwise, provided it be done with due diligence after the receipt of the letter containing the propsoal, and before any intimation is received that the offer is withdrawn; but the acceptance must be *unqualified*. See the opinion for a citation of authorities upon the question *supra*.

JUDGE WOOD DELIVERED THE OPINION OF THE COURT:

It is an undisputed fact, that the slaves in contest in this action were the property of appellant anterior to the negotiation by the letters which are shown to have been sent and received by the parties respectively, in regard to the sale on the one side and the purchase on the other, of said slaves.

The first, and indeed the principal and controlling, question presented upon the record is this: Did the letter from appellant to appellee, dated 18th Nov., 1859, and the letter from the latter to the former in response, dated 26th of the same month, create a contract of sale between the parties, by which the title to the property was changed, and passed from appellant to appellee?

We presume that no one doubts that in creating a contract the negotiation may be conducted by letter; and that the contract is complete when the answer containing a direct and unconditional acceptance of a distinct proposition is dispatched by mail or otherwise, provided it be done with due diligence, after the receipt of the letter containing the proposal, and before any intimation is received that the offer is withdrawn. There is no necessity in this case of any controversy in regard to that doctrine. The true and exact matter in dispute betwixt the parties relates to the nature of the supposed acceptance by appellee, in his letter of the 26th Nov., of the proposition which had been made to him, by appellant, in his letter of the 18th November. Was there such an acceptance as completed

the contract, so that the parties were equally and mutually bound after the moment of time at which the letter of the 26th November was deposited in the mail?

That this question may be answered correctly it is necessary that we look to the nature of the assent to a proposition which the law requires in order to make a .contract. Parsons says (1 *Parsons on Contracts, p.* 399,) "there is no contract unless the parties assent thereto, and they must assent to the same thing in the same sense ; and the parties must assent to an agreement, and this agreement must be obligatory."

"The assent must comprehend the whole of the proposition, it must be exactly equal to its extent and provisions, and it must not qualify them by any new matter."

"If the answer departs from the proposition, either in words or effect, or varies the terms of the offer, or substitutes for the contract tendered one more satisfactory to the respondent, in these cases there is no assent and no contract. The respondent is at liberty to accept wholly, or to reject wholly; but one of these things he must do ; for if he answers, not rejecting, but proposing to accept under some modifications, this is a rejection of the offer."

The doctrine is briefly but very distinctly stated by the supreme court of the U. S., in *Eliason vs. Henshaw,* (4 *Wheaton,* 225,) as follows : "It is an undeniable principle of the law of contracts, that an offer of a bargain by one person to another, imposes no obligation upon the former, until it is accepted by the latter, according to the terms in which the offer was made. Any qualification of, or departure from, those terms invalidates the offer, unless the same be agreed to by the person who made it. Until the terms of the agreement have received the assent of both parties, the negotiation is open, and imposes no obligation upon either party." This was a case in which the negotiation between the parties, in reference to the sale of flour, was conducted by letters. And it was decided by the supreme court that the party who had made an offer was not bound, because the adverse party had not accepted the offer, according to the terms in which it was made ; and that the cir-

cuit court should have instructed the jury that the plaintiff who sued upon the alleged contract could not recover.

In *Hazard vs. The N. E. Marine Ins. Co.*, (1 *Sumner's Circuit Court Reports*,) Judge Story, with distinctness and emphasis, recognizes the principle that the parties to a contract must agree to the same subject matter in the same sense. They must contract "*ad idem.*"

In the case of *Tayloe vs. Merchants Fire Ins. Company*, (9 *Howard*, 390,) the supreme court, in deciding, as they did, that putting the answer by letter in the mail containing an acceptance of a proposition is valid as a constructive notice of the acceptance, give their approval to the other doctrine that the acceptance must be *unqualified*. In the opinion it is said, "the unqualified acceptance by one of the terms proposed by the other, transmitted by the due course of mail, is regarded as closing the bargain, from the time of the transmission of the acceptance." *Eliason vs. Henshaw, supra*, is cited and incidentally approved. The doctrine is sanctioned by all the elementary authors. (See *Chitty on Contracts, pp.* 10–11.)

Now did the letter of appellee, dated 26th Nov., in answer to appellant's letter of the 18th of the same month, contain such an acceptance of the proposition made and communicated in the latter letter as the law requires to make the contract complete and equally and mutually binding upon both parties? It is the opinion of the court that *it did not*.

It is true that appellee, after acknowledging the receipt of appellant's letter of the 18th, and briefly repeating the proposition of appellant—namely, that he could get the negroes by sending Henry's note and a check for $1,500—says "I will take them." But these words are liable to any qualification, or condition, or proposition, which the respondent thought proper to annex, for the purpose of showing the terms on which he was willing to take the negroes.

Did he add any such qualification, condition, or proposition? In the same sentence in which the expression "I will take them" is found, (for there is not a full stop at the end of this expression—*i. e.*, the words, "I will take them" do not, of themselves, make a complete sentence, according to the copy

of the letter incorporated in the record,) the fact is stated that there is an attachment levied on the negroes of $50 and costs by the turnpike company, and appellant is required to settle that to relieve the slaves from the incumbrance. "Or, (says the writer,) I can do it (settle the attachment,) if you wish and send you their receipt, and retain the amount out of the $1,500." In an after part of the letter is this expression, awkwardly put in, "or fix it so it wont come against me," which we understand to refer to some sort of indemnity against the attachment.

It is particularly worthy of note that the statement of the terms upon which he proposed to sell the slaves is very distinct and somewhat emphatic. He says, "so if you want them you can have them by sending me my note which Henry holds against me, and a check for $1,500." And again, "I have determined to take no less than my note which Henry holds against me, and a check for $1,500." If appellee intended to accept this distinct proposition unconditionally, and without any sort of qualification, it might have been done in very brief terms. If he had simply said in response, "I will take them," and no more, the acceptance would have been appropriate and sufficient. Of course the necessary implication would have been, "upon the terms proposed." But he did not accept in this mode. True he said, "I will take them," but he said more. He added what amounts to a qualification of the acceptance, or a condition upon which the acceptance is made. He says there is an attachment upon the negroes, * * * "you must settle that." This is a positive requirement. The question occurs, *when* must it be settled ? Unquestionably the only answer is, before the contract is completed. That we may correctly interpret the acts and words of appellee, we must ascertain, if possible, how the thing laid in his own mind— what were his meaning and intention. Did he intend to be understood as closing the contract before the incumbrance to which he alluded was removed ? We think not. After writing the words "you must settle that," he adds, "or I can do it if you wish, and send you their receipt, and retain the amount, out of the fifteen hundred dollars."

Let us recur to the proposition of appellant, and contrast that with the supposed acceptance of appellee. The proposition is, "you can have them (the slaves) by sending me my note which Henry holds, and a check for $1,500." The answer, in its true sense and meaning is, "I will take them, provided you will remove the incumbrance, settle the attachment which has been levied on them, or permit me to do it, and retain the amount out of the $1,500," "or if you will fix it (the attachment) so it will not come against me." These must be regarded as a qualification of the acceptance, or as a condition, or additional proposition, showing the terms on which the respondent was willing to take the slaves. Appellant did not offer to take the Henry note and a check for $1,500, less the amount for which the slaves had been attached, and the costs of the attachment. No, the "*note*" and a check for $1,500, undiminished by any amount, were to be sent before appellee could have "*them.*" But he makes a new proposition—namely, to send the note and a check for so much of the sum of $1,500 as will be left, after the $50 and costs of the attachment are deducted. Or, if appellant "wanted it (the attachment) to go on to court, and see what would be done," appellee would send the note and check, provided the attachment was fixed so it would not come against him, or in other words, if he were indemnified against loss by reason of the attachment. This is the undeniable import of the response. And surely it is not the expression of a willingness or intention to take the slaves *upon the precise terms* prescribed in the offer. It is not such an actual or absolute acceptance as binds the proposer to his proposition. It is an offer to perform what appellee was expected upon his part to perform, in a manner different from that proposed by the other party. The parties have not, in the language of Judge Story, used in *Hazard vs. N. E. Marine Ins. Co.*, (*supra*,) "contracted *ad idem.*" There is an absence of "an agreement to the same subject matter in the same sense." There is not a "concurrent assent of the two minds to the same thing at the same time," which is essential to the completion of a valid contract, according to the fundamental principle applicable to the case.

It is plain that appellant did not consider the response of appellee as an acceptance of his proposition, for instantly upon its reception, upon the spur of the occasion, acting upon his impromptu and very natural conclusions in regard to the meaning of appellee's letter, he wrote a second letter, dated 6th December, by which he terminated *pro tempore*, at least, the pending negotiation.

And here we remark that it is fairly presumable, from the evidence, that this letter was received by appellee before he mailed, or even wrote, his letter of the 13th December, in which he enclosed the Henry note and the check for $1,500 on the Bank of America, drawn by the branch bank at Greensburg.

Appellant's second letter is dated 6th December. It was probably mailed the same day, or at the latest on the next day, the 7th. It is proved by the witness, Allen, that from two to three days are required for the transit of letters between Charleston and Greensburg, by the usual course of the mail. Without some unusual detention the letter should have arrived at Greensburg by the 10th day of the month. And it is reasonably inferable that appellee received it immediately, or at most within a day or two after the arrival at the post office.

Allen states that he received the letter of appellant to himself, dated 10th December, on the evening of the 13th, and before the letter of appellee of that date, in which the note and check were enclosed, could have left the office at Greensburg.

In addition to this, appellee's letter last named seems to us to furnish pretty strong internal evidence that he had received the letter of the 6th December before his was written. Its phraseology is cautious and guarded, and is evidently the result of careful deliberation.

And if the note and check were thus sent, after the antecedently pending negotiation had been terminated, and appellant's proposition had been in effect withdrawn, which facts must have been known to appellee, as we are authorized to infer from the testimony they were, then such sending the note and check was not a compliance, in good faith, and in a reasonable time, with the proposition communicated in the letter

of the 18th November, which was received by appellee on the 25th or 26th of the same month.

It is further to be observed, that the acts of appellee confirm the construction which this court has given to his letter.  He did not send the note and check until after Allen, the agent of appellant, had returned from Adair, and had given to him, or to his agent and father for him, an obligation to indemnify him against loss on account of the attachment.   In another form of expression, until after one of the conditions by which he had qualified his acceptance had been complied with.

Meantime the negotiation had been terminated, and the proposition for a sale had been withdrawn as we have seen above.

The circuit court, both in giving and refusing instructions, seems to have acted upon the opinion, which we have no doubt was entertained by the judge, that the two letters of the 18th and 26th November, written by the parties respectively, created a valid and complete contract, mutually obligatory upon them. That opinion was erroneous.   And the error is a radical and fundamental one, which pervades and affects the entire action of the court in reference to instructions.

The first instruction which was given assumes that Blakeman's letter of the 26th November was a sufficient acceptance of Hutcheson's proposition, made in his letter of the 18th, to make a contract between them, and was erroneous as we have been endeavoring to show.

The second instruction is erroneous in requiring the jury to believe that the proposition made by appellant in his letter of the 18th November, had been withdrawn antecedently to the writing and mailing of appellee's letter of the 26th November, and that he had notice of the withdrawal, before they could find for appellant.

This error is attributable of course to the misconception, upon the part of the court, of the true character and effect of the latter letter.

Such of the instructions, asked for by appellant and refused by the court, as expressed the same view of the correspondence between the parties, and of their rights and duties under

it, indicated in this opinion as the view of this court, should have been given, and it was error to refuse them.

It is clearly proved that Moses Blakeman, the father of appellee, acted in the whole affair as the agent of his son. No one can doubt, after reading the testimony, that he was the chief actor in the matter, with the consent and by the authority of appellee. It was therefore error to refuse the instruction in which appellant asked the court to say to the jury, "that if they believed, from the evidence, that Moses Blakeman acted as the agent of the defendant, D. C. Blakeman, in obtaining the note from Henry and the check, and means to procure the check, then the delay on the part of Moses Blakeman, as agent of David C. Blakeman, should be considered as the delay of David C. Blakeman."

For the errors aforesaid the judgment of the circuit court is reversed, and the cause remanded with directions to grant a new trial, and for further proceedings in conformity to the principles and rulings of this opinion.