## WRIGHT VS. SPERRY and wife.

Tax Deed: *Irregularity in publishing notice to redeem— Who may acquire tax title— Tenant in common.— Warranty of title : subsequently acquired title.*

1. A deed made in 1861, upon a sale in 1857, was not invalid because publication of the notice to redeem was not completed (as prescribed by statute) six months before the time for redemption expired. Dixon, C. J., dissents.
2. Where the mortgage of land, and the foreclosure judgment and sale, purport to be of the *whole* premises, but the purchaser acquires in fact only an undivided part, and becomes in law tenant in common with the mortgagor, he may take title to the remainder, by purchase of an outstanding tax deed of the whole, his claim of title to the whole under the foreclosure sale being adverse to that of the mortgagor.
3. Downer, J., was of opinion that an assignment of "the mortgage" alone, authorizing the assignee "to foreclose or release the same at pleasure," did not convey the *legal estate in the land ;* and that title subsequently acquired by the mortgagor (though the mortgage contains a covenant of warranty) did not enure to the assignee, nor to the purchaser on foreclosure brought by him, and to which the mortgagee was not a party. Dixon, C. J., thought otherwise. Cole, J., expressed no opinion on that point.

APPEAL from the Circuit Court for *La Fayette* County.

Ejectment. Plaintiff, *W. H. Wright*, claimed under the purchaser at a foreclosure sale, in Dec., 1859 ; and also under a tax deed to one George W. Wright, made March 27th, 1861, on a sale in 1857, for taxes of 1856.* The circuit court held the tax deed invalid, because *Mr. Sperry*, in whose name the land was assessed, resided thereon, with sufficient personal property

---

* The date of the commencement of this action does not appear from the printed papers now on file in this court; but it seems to have been *before* March 27, 1864.

to satisfy the taxes. It also held that plaintiff acquired only an undivided fourth part of the land at the foreclosure sale; that *Mrs. Sperry* owned, the other undivided three-fourths; and that plaintiff, being a tenant in common with her of the land in dispute, could not recover in this action. Judgment accordingly; from which the plaintiff appealed.

*P. A. Orton, Jr.*, with whom was *S. U. Pinney*, of counsel:

1. The effect of the tax deed of 1861, as evidence, must be determined by ch. 66, Laws of 1854—the law in force at the time of the sale. *Robinson v. Howe*, 13 Wis., 341; *Smith v. Cleveland*, 17 id., 556; *Lain v. Shepardson*, 18 id., 61; *Bruce v. Schuyler*, 4 Gilm., 221; *Garrett v. Wiggins*, 1 Scam., 335; *Blackwell*, 556–61. Under that law the deed was not invalidated by the irregularity sought to be proved. 2. The covenant of warranty in defendants' mortgages runs with the land. Rawle on Cov., 352. It runs in favor of a purchaser at a judicial sale. Rawle, 352; *Town v. Needham*, 3 Paige, 546; *Carter v. Denman*, 3 Zab., 270; *Brisbane v. McCrady*, 1 Nott & McC., 104; *Lewis v. Cook*, 13 Iredell's Law, 196; *Markland v. Crump*, 1 Dev. & Batt., 94; *Redwine v. Brown*, 10 Ga., 320. It runs to the assignee, though he be not named. Rawle, 610; 4th Resolution, *Spencer's Case*, 1 Smith's L. C., 77. Sufficient estate passed by the mortgages to support this covenant. Rawle, 392; American note to *Spencer's Case*, Smith's L. C., 100; *Beddoe's Ex'rs v. Wadsworth*, 21 Wend., 120; *Slater v. Rawson*, 1 Met., 456; *Dickson v. Desire*, 23 Mo., 151; *Vancourt v. Moore*, 26 Mo., 92; 6 Barb., 166; *Dickinson v. Hoomes' Adm'r*, 8 Grat., 399; *Adm'rs of Backus v. McCoy*, 3 Ohio, 316. 3. *Mrs. Sperry*, a married woman, is estopped by her covenant of warranty from setting up a subsequently acquired title. Counsel argued that, under many of the American authorities, this would be so independent of the statute. But sec. 2, chap. 44, Laws of 1850 (R. S. 1858, ch. 95) gave to married women the right to make all contracts with reference their separate es-

tate which may be "necessary or convenient to its beneficial enjoyment" (*Conway v. Smith*, 13 Wis., 126), and therefore a right to convey it with the usual real covenants. She may convey "in the same manner and with the same effect as if she were unmarried," and therefore by the usual modes of conveyance.

*Jas. H. Knowlton*, for respondent, contended that *Mrs. Sperry*, as a married woman, was not in any way bound or affected by her covenant of warranty. 2. The covenant does not bar her from subsequently acquiring for herself title to the three-fourths, because the deed passed an interest in the land, conveying a good title to one-fourth. Washb. on R. P. (2d ed.), 484; *Lewis v. Baird*, 3 McLean, 56, 78, 79; 4 Kent, 98; *Jackson v. Hoffman*, 9 Cow., 271; 2 Preston on Abstracts, 216, 410; *Blanchard v. Brooks*, 12 Pick., 47; 2 Saund., 388*d*. 3. Plaintiff, being tenant in common with *Mrs. Sperry*, could not acquire title to her portion under the tax deed. *Van Horne v. Fonda*, 5 John. Ch., 407; 4 Littell, 187; 2 Black, 513; 3 Greenl., 196; 8 Mich., 254, 265; 13 Ill., 481; 11 id., 322; 12 id., 465; 30 id., 144; 6 Ohio, 102; 10 id., 158; Adams' Eq., 355.

DOWNER, J. *Sperry and wife*, in 1856, made three mortgages to Gribble of eighty acres of land, each containing a covenant of warranty of title. Gribble assigned the mortgages to Halstead, who foreclosed them; and the appellant claims title under the purchaser at the foreclosure sale. *Sperry and wife*, at the time the mortgages were made, were in possession of the land, but had title to only an undivided one-fourth part thereof, and the title to that was in the wife. After the purchaser at the foreclosure sale had received and caused to be recorded the sheriff's deed of the premises, *Mrs. Sperry* purchased the other three-fourths of the land, and caused the deeds to her to be recorded.

The first question for our consideration is: Did the subse-

quently acquired title enure by way of estoppel to the benefit of the plaintiff? Or, in other words, did the covenant of warranty run with the land? It is a general principle that covenants run only with the *legal* title to lands and tenements. *Beardsly v. Knight,* 4 Vt., 471 ; *Randolph v. Kinney,* 3 Rand., 396 ; *Watson v. Blaine,* 12 S. & R., 131, 139 ; *Allen v. Wooley,* 1 Blackf., 149; 1 Smith's L. C., 121 et seq ; Rawle on Cov. Tit., 352 et seq.

A mortgagee takes the legal title, and, on default being made in the payment of the debt thereby secured, if there is no statutory provision to the contrary, may maintain ejectment. It has been decided in Massachusetts, that " a mortgage is considered, as between the mortgagor and mortgagee, and so far as is necessary to give full effect to the mortgage as a security, as a conveyance in fee; but for all other purposes, until entry for condition broken, is a mere charge or incumbrance; and that a conveyance of the estate subject to the mortgage, by the mortgagor, passed such an interest or title as covenants real would attach to, and pass with the estate to the grantee." *White v. Whitney,* 3 Met., 81. See also *Sumner v. Williams,* 8 Mass., 162; *Town v. Needham,* 3 Paige, 545. It is maintained that these and similar authorities make an exception to the general rule that covenants run only with the land itself, or with the legal title. We think, however, they are in harmony with it, and only decide that for some purposes the legal title is in the mortgagee, and for others in the mortgagor.

For the purposes of this action, within all the authorities, the *legal* estate was in form conveyed by *Sperry and wife* to Gribble. Did Gribble convey it to Halstead? On the back of each of the mortgages Gribble executed, under his hand and seal, an instrument in writing, duly witnessed and acknowledged, as follows : " For value received, I, William H. Gribble, the person to whom the within mortgage was given, hereby assign the same to Charles Halstead, and authorize him to

foreclose or release the same at his pleasure." What is transferred by this instrument? Anything more than the formal instrument called a mortgage? It does not, certainly, transfer the debt secured by it. It does not convey the land mentioned in the mortgage. Assignments of mortgages, such as are in use among us, ordinarily assign and transfer the mortgage and the debt secured by it; and some of them, in addition, convey the land therein described. Such conveyance of the land is necessary to the transfer of the legal title, so that the assignee can maintain an action of ejectment; and we think it is equally necessary in order that covenants for title in the mortgage should run with the land and pass to the assignee.

An assignment of the formal instrument called a mortgage, and of the debt thereby secured, only passes an equitable interest in the mortgaged premises—gives the right to enforce in equity the mortgage lien—but does not in form convey the land, and passes no such interest as, within any of the authorities, real covenants run with. But the assignment in this case does not purport even to transfer the debt secured by the mortgage; and if it does do it, it is only by doubtful implication. Such, no doubt, was the intention of the parties, and the notes probably were delivered with the assignment, and the assignee thus became the owner thereof. It has been held, however, and we think rightly, that the assignment of a mortgage without the debt which it was given to secure, passes no beneficial interest to the assignee. *Bailey v. Gould*, Walk. Ch., 478. The benefit of the covenant of warranty, we think, did not pass to Halstead, as the legal title to the land to which it was attached did not vest in him. He could transfer to his assignees no greater interest than he had, and the purchaser at the foreclosure sale (the mortgagee not being a party to the action) acquired no greater or better title or interest than the parties to the action had. Neither he nor his assignees have or would have had, if there had been a total failure of title, any right to

maintain an action upon the covenants of warranty in the mortgages. That right has not been transferred to either of them; and as the principal reason for allowing a subsequently acquired title to enure by way of estoppel was to prevent circuity of action, we think the doctrine cannot be applied so as to divest *Mrs. Sperry* of the three-fourths of the land conveyed to her after the foreclosure sale.

2. We now proceed to the consideration of the appellant's title under the tax deeds. The premises were sold in April, 1857, for the taxes of 1856; and on the certificate of sale a tax deed was made to George W. Wright, on the 27th day of March, 1861. The circuit court found that the list of unredeemed lands, including that in question, was not advertised six months previous to the expiration of the time to redeem, but that the last six insertions ran into the six months. The deed was not executed until more than four years after the sale; and clearly, if the statutes in force at the time of the sale are to govern, it is not affected by such irregularity. See sec. 153, ch. 18, R. S., 1858; ch. 66, Laws of 1854, sec. 122; ch. 15, R. S., 1849. But if subsequent statutes are applicable to the advertisement of the unredeemed lands, and to the deed, we do not think, even then, that the failure to advertise the notice to redeem would make void the deed. The statute requiring the notice is merely directory, and if not complied with, inasmuch as it is an act required by law to be done after the certificate of sale has issued to the purchaser, and over which he can have no control, the omission of it ought not to be held in any way to affect him, unless the statute expressly prohibits a deed, or makes it void, in case the notice of redemption is not duly published.

3. On the 27th day of June, 1862, George W. Wright, the grantee in the first tax deed, conveyed the premises to the appellant. It is contended, that as the appellant was a tenant in common with *Mrs. Sperry*, he could not acquire this outstand-

ing tax title to the whole of the land, but as to the three-fourths belonging to *Mrs. Sperry*, he holds it in trust for her, she being bound to pay him three-fourths of the money by him advanced in buying the title.    The authorities cited by the appellant on this point are to the effect, that when two persons are in possession of lands claiming them as tenants in common, each admitting the other to be such tenant, but their title is imperfect, neither should be permitted to buy in for his exclusive benefit an outstanding title, and thus undermine and oust his companion.    Such act, it is said, would be immoral, because it would be against the reciprocal obligation to do nothing to the prejudice of each other's equal claim, which the relationship of the parties created.    The parties are under a mutual obligation to deal candidly and benevolently with each other.    Such is the reasoning in *Van Horne v. Fonda*, 5 Johns. Ch., 406, which is a leading case on this subject, and cited approvingly by most of the subsequent authorities.    But these authorities are not to the effect that in no case can a tenant in common purchase in an outstanding title for his exclusive benefit.    After an eviction of the tenants in common by the paramount title, either of the tenants may then purchase in such title for his exclusive benefit.    *Coleman v. Coleman*, 3 Dana, 398.    If one tenant in common conveys the whole estate, and the grantee enters under the conveyance claiming the whole premises, such entry and possession are adverse, and constitute a disseizin of the co-tenants.    *Kittridge v. Locks & Canals*, 17 Pick., 206 ; *Parker v. Locks & Canals*, 3 Met., 91 ; *Jackson v. Smith*, 13 Johns., 406 ; *Clapp v. Monaghan*, 9 Cow., 530 ; *Cullen v. Matzen*, 13 Serg. & Rawle, 356 ; 4 Paige, 178.    Although the entry of one tenant in common, *eo nomine*, is the entry of both, yet if one enter claiming the whole, and continue in possession of the whole, keeping his co-tenants out, such entry and possession are adverse ; and from the time of the commencement thereof the statute of limitations begins to run

against his co-tenants. 9 Cow., 554, and authorities there cited. These authorities show that the doctrine of *Van Horne v. Fonda* applies only where tenants in common are in actual possession of the land, or where one enters as such tenant, and so his possession is the possession of all the tenants. During such possession, each is under obligation morally and legally to protect their common estate, and if any one expends money in so doing, as in paying taxes, liens thereon, or buying in an adverse title, he has a right of action against his co-tenant to recover the share he should have contributed. While he claims as a co-tenant, he is presumed, if he buys in an outstanding title or pays off an incumbrance, to act not only for himself but for his co-tenants. But after one tenant denies the rights of his co-tenants, and claims the whole property, such claim being known to them, they have no longer any reason to suppose that in anything he does respecting the land he acts for them, but on the contrary they know that he claims and intends to act solely for his own benefit. It is then no longer a fraud on their rights for him to buy in an outstanding title, and hold it exclusively for his own benefit. Certainly it is not unreasonable so to hold, if he may, without such outstanding title, by merely entering into possession of and claiming the whole land, acquire by adverse possession a perfect title to the whole, unless his co-tenants within twenty years commence an action against him.

We will now apply these principles to the point under consideration. *Sperry and wife* conveyed, by way of mortgage, with covenant of warranty, the *whole* land to the mortgagee. This mortgage was foreclosed, and *all* the land was sold by virtue of the judgment of the court; and the purchaser at that sale purchased the *whole*, and received a deed of the *whole*, and conveyed the *whole* to the present plaintiff. The presumption is that he and his grantor claimed the *whole*, and intended to hold the *whole;* and this *Sperry and wife* knew, for they *first*

conveyed the whole of these premises, and were parties to the foreclosure action. The purchaser at the foreclosure sale had the right of immediate possession of all the premises, and might have had a writ of assistance to put him in possession; and if he had taken actual possession, it would have been adverse to the co-tenants who afterwards conveyed to *Mrs. Sperry.* Perhaps we ought to hold that the possession of *Sperry and wife,* after the confirmation of the sale, was the possession of such purchaser as to the whole of the land. But neither the plaintiff nor his immediate grantor ever claimed as tenant in common, or admitted that *Mrs. Sperry,* or those who conveyed to her since the foreclosure, had any interest as tenants in common in the premises. He claimed the whole premises before he bought in the outstanding tax title. We hold, therefore, that within the spirit, if not within the letter, of the authorities we have cited, he had a right to purchase it for his exclusive benefit, and he must be presumed to have done so.

There is no other objection to the tax deed or title which we deem plausible, or such as to require further consideration. For aught that now appears, the grantee in that deed thereby acquired title to the entire premises.

DIXON, C. J., dissents, except as to appellant's capacity to take title by tax deed.

COLE, J. I concur with Mr. Justice DOWNER in holding that the tax deed on the sale of 1857 to George W. Wright was not invalidated because the redemption advertisement required to be made was not completed at least six months before the expiration of the period of redemption.

I have not examined the first point in the case sufficiently to express an opinion upon it and therefore do not wish to be understood as doing so.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.