NATHANIEL PAGE *v.* ELISHA M. ROGERS AND RUSSEL H. ROGERS.

WHAT TITLE EXECUTION PURCHASER ACQUIRES. — The purchaser of real estate sold on execution, upon the delivery to him of the Sheriff's certificate of sale, acquires a species of conditional equitable estate in the land, subject to be defeated only by a redemption within the time allowed by law, leaving the legal title, with

a right of redemption only, in the judgment debtor, which the Sheriff may convey to the purchaser by executing a deed to him after the expiration of the period allowed for redemption.

TITLE OF EXECUTION PURCHASER BEFORE REDEMPTION.—During the period which elapses between the sale of land on execution and the expiration of the time for redemption, the statute regards the purchaser as the owner in equity of the land, subject only to the right of redemption, and gives him the rents and profits, or the value of the use and occupation—in short, the entire beneficial interest in the property, except the actual possession.

ESTATE OF PURCHASER AT JUDICIAL SALE LIABLE TO EXECUTION.—The purchaser of real estate upon execution sale, both before and after the period for redemption expires, has an estate in the land purchased which may be levied on and sold on an execution running against his property.

INTEREST OF EXECUTION PURCHASER IN PROPERTY.—The purchaser of real estate at execution sale has, before the period for redemption expires, a species of equitable conditional estate, which becomes absolute upon the expiration of the time for redemption, leaving, thereafter, only the barren legal title in the judgment debtor, until the execution and delivery of the Sheriff's deed.

SHERIFF'S DUPLICATE CERTIFICATE OF SALE.—A duplicate of a Sheriff's certificate of sale of land was deposited by the Sheriff with the Recorder of the proper county, indorsed "filed" by the latter officer, recorded as a deed in a book of records of deeds, and regularly indexed as a deed, and afterwards placed in a file of recorded deeds, but not with a file of certificates of sales, where it remained in said Recorder's office till the time of the trial of the case—some ten years afterwards. Held, that notice was imparted to subsequent purchasers by the instrument thus deposited and preserved.

FILING DUPLICATE CERTIFICATE OF SALE GIVES NOTICE.—The filing of a Sheriff's duplicate certificate of sale in the office of the County Recorder, imparts constructive notice of the estate acquired under it to subsequent purchasers and attaching creditors, and such notice continues after the time for redemption has expired and until the Sheriff's deed has been delivered and recorded.

FILING CERTIFICATE OF PURCHASE.—The purpose of filing a duplicate of a certificate of purchase made at execution sale, is to give notice to third persons of its existence and contents.

DOCKETING JUDGMENT IMPARTS NOTICE.— The docketing of a judgment imparts constructive notice of the lien of the judgment on the real estate of the judgment debtor to strangers to the judgment.

PURCHASERS OF LAND AT SHERIFF'S SALE UNDER DIFFERENT JUDGMENTS.—January 26th, 1855, a judgment against C. became a lien on his land. May 7th, 1855, R. purchased the land at Sheriff's sale made on an execution issued on the judgment, and received a certificate, and a duplicate was filed in the office of the Recorder. A judgment in favor of H. against C. became a lien on the same land March 1st, 1855. November 17th, 1855, H. purchased at Sheriff's sale made on an execution issued on his judgment, the same land, and a certificate of sale was made to him, and a duplicate also filed. July 7th, 1858, H. received and recorded a Sheriff's deed. November 15th, 1861, P., the assignee of R.'s certificate, received and recorded a Sheriff's deed. H. had no actual notice of the sale to R. H. was in possession under his purchase, and November 6th, 1861, P. sued to recover possession. Held, that H. had constructive notice of the prior sale, and that P. was entitled to recover.

*Per* Shafter, J.:

When Filing Sheriff's Certificate does not give Notice.—If a Recorder has a place in his office where he keeps Sheriffs' certificates of sale, and a given certificate is not kept in that place but in another and different place, its filing does not give notice to third persons of its existence or contents.

Appeal from the District Court, Third Judicial District, Alameda County.

The plaintiff appealed from the judgment.

The other facts are stated in the opinion of the Court.

*Patterson, Wallace & Stow*, for Appellant. Hibberd, at the time of his purchase, and when he received his deed, had constructive notice of the prior sale to Rogers. The Smiley judgment first became a lien, and that lien had not expired when Hibberd purchased. If the sale to Hibberd had been made first it would not have extinguished the lien of the Smiley judgment. (*Rankin* v. *Scott*, 12 Wheaton, 177.) When land is sold under execution upon a judgment before the lien of the judgment becomes dormant, the title relates to the date of the judgment and overreaches intermediate alienations although made to *bona fide* and innocent purchasers. (*Miller* v. *Estell et al.*, 8 Yeager, Tenn. 452.) " It is well settled in this State, as well as elsewhere on authority, that a sale under a junior judgment is void as against an elder one, and that the property is still subject to be seized in satisfaction of the prior judgment." (*Talbut* v. *Melton*, 9 Smedes and Marshall, 26 ; *Kollock et al.* v. *Jackson*, 5 Georgia, 157–8.) The delivery of the Sheriff's deed to appellant Page, took effect, by relation, as of the time the sale was made to his assignor Rogers, and was executed, in judgment of law, at the expiration of the six months from the making of the sale under the Smiley judgment, and overreached the sale made to Hibberd under his judgment. (*Jackson* v. *Dickinson*, 15 John. 315 ; *Wright* v. *Douglas*, 2 Comstock, 373 ; *Jesse Fell et al.* v. *Robert Price et al.*, 3 Gilman, 186 ; *Jackson ex dem. De Forrest* v. *Ramsey*, 3 Cowen, 75 ; *Smith* v. *Allen*, 1 Blackford, 22 ; *Boyd* v. *Longworth*, 11 Ohio, 235.) Mr. Hibberd was a *judgment plaintiff*

and bought at an execution sale upon *his own* judgment. He is, *for that reason alone,* incapable of occupying the position of a *bona fide* purchaser at such sale. He paid nothing but the Sheriff's poundage upon making the sale, and credited his bid upon his judgment. *Caveat emptor* is the rule in such a case. (*Boggs* v. *Hargrave,* 16 Cal. 564 ; *Rowan et al.* v. *Harris,* 1 S. & M. Ch. R. 49 ; *Heistner* v. *Fortner,* 2 Binney, 46 ; *Danley* v. *Rector,* 5 English, 212 ; *Priest* v. *Rice,* 1 Pick. 164.)

*E. W. F. Sloan,* for Respondents. The question whether Hibberd or Page acquired the better right depends for solution, not upon the priority of the respective liens, but upon the operation of the statute concerning conveyances, and general principles of law. A Sheriff's deed is a conveyance within the meaning and is subject to the provisions of the Act concerning conveyances ; and a purchaser at a Sheriff's sale whose deed is first duly recorded is protected by that Act against all prior unrecorded conveyances of which he had no notice at the time of his purchase. (*Jackson* v. *Dubois,* 4 J. R. 220 ; *Jackson* v. *Terry,* 13 J. R. 473 ; *Jackson* v. *Town,* 4 Cow. 606 ; *Jackson* v. *Post,* 9 Cow. 121 ; *Jackson* v. *Chamberlain,* 8 Wend. 626–8 ; *Scribner* v. *Lockwood,* 9 Ohio, 184 ; *Heistner* v. *Fortner,* 2 Binn. 40–5.) Hibberd, defendants' lessor, is a *bona fide* purchaser for a valuable consideration, without notice of the prior sale to William P. Rogers. The lien of a judgment on real estate is extinguished by a sale of the property under it, even if there be a balance left due ; and this, though the plaintiff in execution becomes the purchaser. (*Russell* v. *Allen,* 10 Paige, 254 ; *Schemerhorn* v. *Merrill,* 1 Barb. S. C. 517.) The statute concerning Recorders provides that that officer shall keep books wherein shall be recorded all instruments in writing authorized and required to be recorded ; but a Sheriff's certificate of sale is not one of them. When Rogers' certificate was recorded and indexed and placed among deeds it ceased to belong to the files which were subject to public inspection, and was no longer a document belonging to the office. Hibberd, therefore, not only pur-

chased, but *received and recorded* the Sheriff's deed, without notice of the prior sale to Rogers either actual or constructive. The statute, it is true, does not in express terms provide that the filing of the certificate shall impart notice of the sale to any one. Neither does it provide that any one shall be charged with notice by the docketing of a judgment. It merely directs the Clerk, after filing the roll, to make the proper entries in the docket; and declares that from thence it shall become a lien on the real property of the debtor in the same county. The creditor's judgment lien being extinguished by the sale on execution, it becomes the purchaser whose lien then begins to maintain his initial advantage by compliance with the express directions of the law. He cannot safely regard as an idle ceremony that which the statute expressly requires to be done towards the preservation of his inchoate right.

*Patterson, Wallace & Stow*, in reply. The case is free from the question of *bona fide*. The Smiley judgment was the elder lien. The Sheriff lodged the duplicate with the Recorder. The statute does not require the Recorder to keep the certificate in any particular place. If Hibberd was not a *bona fide* purchaser at the time of his sale, recording his deed did not make him so.

*E. W. F. Sloan*, and *S. Heydenfeldt*, in reply, argued that the rule, that by the *laches* of a prior vendee in recording his deed a subsequent purchaser without notice acquired a good title, applied to Sheriff's deeds; and cited *Irvine* v. *Campbell*, 6 Binney, 118; *Jackson* v. *Chamberlain*, 8 Wend. 620; and *Jackson* v. *Terry*, 13 Johns. 471.

By the Court, SAWYER, J.:

On the 23d day of January, 1855, Wm. W. Chipman was the owner of the land sought to be recovered in this action. The plaintiff claims title through a sale under an execution

issued upon a judgment recovered by one Smiley, against said Chipman, on said day, in the Superior Court of the City of San Francisco, a certified transcript of the docket of which judgment was duly filed in the office of the Recorder of Alameda County, in which said premises are situate, and became a lien thereon, on the 26th day of January, 1855. The. defendant claims title through a similar sale under an execution issued upon a judgment recovered by one Hibberd against said Chipman, in the District Court for the County of Alameda, which judgment was docketed and became a lien on said premises on the 1st day of March, 1855. The sale under the execution issued upon the Smiley judgment was made by the Sheriff to Wm. P. Rogers, on the 7th day of May, 1855, and on the same day the Sheriff delivered to the purchaser " a certificate of the sale in due form of law, and a duplicate thereof was lodged with the County Recorder of Alameda County to be filed, which was by said Recorder marked ' Filed ;' was then copied into one of the books of record, to wit, Book D of Deeds, p. 396, indexed, and placed among some recorded deeds and remained there until it was discovered at the trial of said cause ; but was not placed with the files of certificates of sale." The execution, with the proceedings thereunder indorsed, was duly returned to the Superior Court of San Francisco on the 2d day of May, 1855. No redemption having been made, either by the judgment debtor or any creditor, the purchaser's right to a Sheriff's deed became absolute on the 8th of November, 1855. On the 17th day of November, 1856, no Sheriff's deed having yet been executed to the purchaser under the Smiley judgment, the same premises were again sold to Hibberd under an execution issued upon his own judgment aforesaid, and a certificate of sale was thereupon duly delivered to the purchaser, and a duplicate duly filed in the office of the Recorder of Alameda County. No redemption having been made, Hibberd became entitled to a Sheriff's deed on the 18th of May, 1857. On the 7th of July, 1858, said Hibberd obtained the Sheriff's deed in pursuance of the sale under his judgment, which deed was on the

same day recorded.  The defendants were in possession as tenants of said Hibberd.

The certificate of sale under the Smiley judgment having been previously assigned to the plaintiff, he, on the 5th of November, 1861, received from the former Sheriff of Alameda County, who had conducted the sale, a deed conveying the premises in pursuance of such sale, which deed was duly recorded on the same day.   Until the record of said deed, said Hibberd had no actual or constructive notice of the sale to said Rogers under the Smiley judgment, save such actual and constructive notice as is disclosed by the matters of record as aforesaid.   Upon these facts the Court found, as a conclusion of law, that said Hibberd was a *bona fide* purchaser without notice of the prior sale of the same premises to Rogers, and that by virtue of the Sheriff's deed to him of July 7th, 1858, he became vested with the title to the premises.   Judgment was thereupon rendered for defendant.   The correctness of this conclusion is the question to be determined.

No question is made upon the validity of the several judgments, or of the original liens acquired under them, or of the respective sales under said judgments.   But conceding the several sales to have been originally valid, it is insisted by respondent that Hibberd had no legal notice, actual or constructive, of the prior sale to Rogers, and that he took the title under the Registry Act in the character of a subsequent purchaser, for a valuable consideration, without notice; or, if not, that Rogers merely acquired a lien by his purchase, which became dormant, and was lost by the *laches* of the purchaser in perfecting his rights under it.

Under the statute, upon a sale of real property, when the interest sold exceeds a leasehold of less than two years unexpired term, the real property sold is subject to redemption, at any time within six months, by the judgment debtor, his successor in interest, or any other party having a lien upon it, subsequent to that upon which the property was sold.   The purchaser receives from the Sheriff a certificate of sale, stating that it is subject to redemption.   (Prac. Act of 1851, Secs.

229, 230.) If no redemption be made within the six months, the purchaser is entitled to a conveyance. (Sec. 232.) Notwithstanding the right of redemption, from the time of the sale till the redemption, the purchaser is entitled to receive the rents and profits, or the value of the use and occupation. (Sec. 236.)

The first question which presents itself, is, what was the character of the interest of Rogers, under the provisions of the statute, after the sale and before the receipt of the Sheriff's deed? The respondents claim that he acquired a mere temporary lien on the land purchased.

The Courts of New York have, on several occasions, alluded to the character of the estate of the purchaser during this period, under similar statutory provisions, and, in doing so, have somewhat loosely designated it as a lien—not the lien of the judgment continued, but a new species of lien acquired by the sale. (*Bissell* v. *Payn*, 20 John. 3; *Van Renssalaer* v. *Sheriff Onondaga County*, 1 Cow. 449; *Smith* v. *Colvin*, 17 Barb. 162; *Snyder* v. *Stafford*, 11 Paige, 76.) But it will be seen, upon an examination of the cases, that this designation was given under circumstances not requiring the Court to determine the exact character of the interest acquired by the purchaser, or to be very accurate in the terms used. It was only necessary to determine that the legal title did not pass to the purchaser until the execution of the Sheriff's deed. All beyond this was *obiter*. And the point decided might have been determined by a simple reference to the sixty-first section of the statute of New York, under which the question arose, which provides, in express terms, that " the right and title of the person against whom the execution was issued, to any real estate which shall be sold thereby, shall not be divested by such sale until the expiration of fifteen months from the time of such sale." (2 Rev. Stat. New York, 373, Sec. 61.) And this was all that was really determined in those cases. Upon these authorities, it has been held in this State, that the legal title does not pass to the purchaser until the delivery of the Sheriff's deed, without regard to the fact

that our statute contains no such provision as that cited from the statute of New York. (*Knight* v. *Fair*, 9 Cal. 117; *McMillan* v. *Richards*, Id. 412; *McMinn* v. *O'Connor*, 27 Cal. 247.) But such, doubtless, is the result, without any express statutory provision to that effect. If the legal title had already passed, there would be no necessity for a further conveyance.

## *Title acquired by a purchaser at a judicial sale.*

To call the interest of the purchaser at a sale on execution before the making of the Sheriff's deed a lien, merely, is not very exact. In a general sense it may be a lien, but it is more. The purchaser obtains an inchoate right which may be perfected into a perfect title, without any further act than the execution of a deed in pursuance of a sale already made. It is not a mere right to have a certain sum, charged upon the property, satisfied out of it. The sum before charged upon the land has already been satisfied by the sale, to the extent of the amount bid and paid by the purchaser. The purchaser has already bought the land, and paid for it. The sale is simply a conditional one, which may be defeated by the payment of a certain sum by certain designated parties within a certain limited time. If not paid within the time, the right to a conveyance becomes absolute, without any further sale, or other act to be performed by anybody. The purchaser acquires an equitable estate in the lands, conditional it is true, but which may become absolute by simple lapse of time, without the performance of the only condition which can defeat the purchase. The legal title remains in the judgment debtor, with the further right in him, and his creditors having subsequent liens, to defeat the operation of a sale already made during a period of six months; after which the equitable estate acquired by the purchaser becomes absolute and indefeasible, and the mere dry, naked legal title remains in the judgment debtor, with authority in the Sheriff to divest it by executing a deed to the purchaser. Even during the period which elapses between the sale and expiration of the time for

redemption, the statute regards the purchaser as the owner in equity, and gives him the rents and profits, or the value of the use and occupation, without any liability to account for them in case of a redemption. In short, it gives him the entire beneficial interest in the property, except the actual possession. In this respect our statute takes away one of the grounds of the argument in *Bissell* v. *Payn*, 20 John. 3. In *N. Y. L. Ins. and T. Co.* v. *Bailey*, 3 Ed. Ch. R. 417, the Vice Chancellor says : "A sale by a Sheriff gives the purchaser under the certificate an inchoate right to the land, if not an interest in the land itself; and it is such a right as will ripen into a title, unless the property be redeemed from him."

The purchaser after the time for redemption expires, and before execution of the Sheriff's deed, has an estate that may be attached and sold on execution. This was so expressly determined in *Wright* v. *Douglas*, 2 Comstock, 373. In that case, the Towanda Bank purchased a tract of land at a sale under execution against one Dennis, on the 6th of June, 1838, and a certificate of sale was filed in the proper office on the 22d of June, 1838. The time for redemption expired in fifteen months—that is to say, on the 6th of September, 1839. The Sheriff's deed to the purchaser, the Towanda Bank, was not executed till the 16th of December, 1845, more than five years thereafter. The plaintiff, Wright, on the 1st day of May, 1843, commenced a suit by attachment against the Towanda Bank, and attached its interest in the said premises purchased under the said sale upon the execution against Dennis. The attachment was followed by a judgment, execution and sale thereunder, of the said interest of the Towanda Bank, to the said Wright, on the 24th of February, 1844 ; and a Sheriff's deed in pursuance thereof was executed on the 30th of August, and recorded on the 29th of September, 1845 —over two months before the execution of the Sheriff's deed aforesaid to the Towanda Bank, in pursuance of its purchase in 1838. In fact, it is highly probable from the report of the case, that Wright himself procured and put on record, for his own protection, the deed from the Sheriff to the Towanda

Bank. The contest was between Wright, relying upon the title thus acquired through the execution sales under the said several judgments against Dennis and the Towanda Bank, and the defendant, who claimed in part, at least, under a deed from Dennis dated December 4th, 1839, recorded October 30th, 1845—before the record of the deed to the Towanda Bank—and, for the purposes of the decision, assumed by the Court to have been delivered after the time of redemption had expired, on the sale to the Towanda Bank under the judgment and execution against Dennis, and before the attachment in the suit of Wright against the Towanda Bank. With respect to the titles thus derived the Court say:

" The land had been sold under a judgment of the bank upon the 6th of June, 1838, and bid in for the corporation. The time for redemption expired on the 6th of September, 1839. By the sale, and lapse of time, the judgment debtor was divested of all his interest in the premises—I say all his interest, because the legal title, which nominally remained with him, was subject to be withdrawn at any moment, with or without his assent, at the instance of the vendee. The debtor had nothing to part with, and could convey nothing, which the deed of the Sheriff, to which the bank was absolutely entitled, would not overreach and annul. It was this interest of the Towanda Bank which was seized upon the plaintiff's attachment, sold upon his judgment against the former, and conveyed by the Sheriff to the plaintiff, in February, 1844."

The attachment authorized by the sixteenth section of the statute, directs the Sheriff to attach " all the estate, real and personal, of such corporation ;" and by the second subdivision of the twenty-seventh section, he is directed to " sell so much of the attached property, real and personal, as may be necessary," etc. (2 R. S., Sec. 553; Sec. 16, 3d Ed.; 555, Sec. 27, 2d Sub.; 1 Id. 750, Sec. 10.) The statute, in terms, applies to an equitable, as well as a legal interest in lands; to any estate, in a word, which may be denominated property.

" If nothing further had been proved, there can be no doubt that the plaintiff could have claimed the execution of a deed by the Sheriff as evidence of the previous sale to the Towanda Bank. The right of the latter to demand a deed of the officer, was incident to their interest in the land. The sale and purchase of that interest by the plaintiff, under his judgment, was at least equivalent to an assignment of the Sheriff's certificate, for a valuable consideration. Equity would compel the execution of a deed under such circumstances, and if given voluntarily by the Sheriff it is equally effectual as though its execution had been compelled by a Court of Chancery. It is immaterial whether it was delivered to the Towanda Bank or not. It is sufficient if it was delivered to, or for the benefit of, the party who had legally acquired their whole title to the premises embraced in the certificate. As the bank could not rightfully prevent such delivery, their assent was not necessary to its validity."

" If this view is correct, the plaintiff, by the proceeding upon the attachment together with the deed from the Sheriff, was invested with a legal title to the premises, which, by relation, took effect from the time of the sale upon the judgment of the bank, as against Dennis and against his subsequent grantees. (3 Cow. 75 ; 15 John. 309.) If this had been all the evidence the plaintiff would have been entitled to a verdict. The defendant, however, introduced a deed dated the 4th day of December, 1839, from Dennis, the original judgment debtor and owner of the premises, to Dana. There is no evidence when this deed was delivered. If executed at this date it must have been given after the right of redemption expired, and before the attachment of the plaintiff was levied upon the land in question. Its effect upon the rights of the parties presents the main question in the cause. It was produced by the defendant ; its contents are not before us, and as the party making it evidence has not deemed it important to incorporate it into the bill of exceptions, no presumptions in his favor are to be indulged. I assume that it was a quitclaim of all the right and title of the grantor to the

grantee, for the nominal consideration of one dollar. If this was the character of the conveyance, Dana succeeded to the rights of Dennis and nothing more. He was the attorney of the bank in obtaining the judgment against his vendor, and purchased not only with constructive but actual notice of the rights of his clients. (2 R. S. 370, Sec. 42.) He stood in the place of Dennis, and his rights were overreached and avoided by the title acquired by the plaintiff under the bank judgment. The plaintiff is therefore not under the necessity of insisting that Dana received this conveyance as the trustee of the Towanda Bank. He stands upon a paramount legal title."

*Estate of purchaser at judicial sale may be seized and sold on execution.*

After the expiration of the time for redemption, then, and before execution of the Sheriff's deed, the purchaser has an estate which is subject to be seized and sold. Upon the same principle, we can perceive no good reason why the interest of the purchaser may not also be seized and sold before the expiration of the time for redemption. He has the same quality of estate before as after the time for redemption expires, only, in the former case, the title has not become consummate, and is subject to be defeated by a redemption. He has an equitable estate in the land in both cases, and not merely a lien before the period for redemption expires. If a sale of the purchaser's interest after the time for a redemption expires operates as an assignment of the Sheriff's certificate of sale, a sale before the time expires must have the same operation. We suppose it is competent for a party voluntarily to enter into a contract for the sale of land, and receive the purchase money, with a covenant to convey six months hence, and a condition of defeasance if the vendors should on or before the expiration of the six months pay to the vendee a specified sum of money. Of course the contract should be strictly and in good faith, one of sale, and not a loan and security for money in the guise of a sale; for that would make it a mortgage. In such case,

39

the vendee would take a conditional equitable estate in the land from the beginning, subject to be defeated by payment according to the terms of the contract. He would not have a mere lien, as in the case of a mortgage. He would have an interest in the land that could be seized and sold on execution. Upon the lapse of the prescribed time without payment, according to the terms of the conditions of the sale, his equitable estate would become absolute, and thenceforth the vendor would merely hold the legal estate in trust for the vendee. We can perceive no difference between this case and that of a purchaser under an execution sale, except that, in the one case, the sale is voluntary, and the terms of the sale are fixed by the vendor, and in the other, involuntary, and the terms prescribed by the statute, with authority in the Sheriff to execute the final conveyance. In the case of the voluntary vendor, as well as of the judgment debtor, other parties by purchasing his interest under executions, or upon voluntary sales, could acquire his interest and defeat the estate of the vendee by performing the conditions, as well as in the case of redemptioners under execution sales. We think, therefore, that Rogers, by his purchase under the execution issued upon the Smiley judgment, acquired a species of equitable conditional estate, which continued until the time of redemption had expired, and then became absolute thereafter, leaving a barren legal title in the judgment debtor, and those claiming under him, liable to be divested at any time by the execution and delivery to Rogers or his assignee of a conveyance by the Sheriff who made the sale. (See, also, *Fell* v. *Price*, 3 Gil. 189, 190.)

Rogers' equitable title became absolute before the sale to Hibberd. Did Hibberd, upon the facts found, as hereinbefore stated, have constructive notice of the said sale to Rogers? Under this head, it is first insisted that, because the duplicate certificate of sale was recorded, and afterward placed with *recorded deeds*, and not with *certificates of sale*, it was not filed in pursuance of the statute, and for that reason construc-

tive notice was not imparted to subsequent purchasers by the record.

The Practice Act provides, that " a duplicate of which certificate shall be filed by the officer with the Recorder of the county." (Laws 1851, p. 88, Sec. 229.) By recurring to the statement already made, it will be seen that " a duplicate thereof (of the certificate of sale) was lodged with the County Recorder of Alameda County to be filed, which was by said Recorder marked ' Filed ;' was then copied into one of the books of records, to wit: Book ' D ' of Deeds, page 396, indexed and placed among some recorded deeds, and remained there until it was discovered at the trial of said cause, but was not placed with the files of certificates of sale." The " Act concerning County Recorders " provides, that, the " Recorders shall have the custody of and shall safely keep and preserve all books, records, maps and papers deposited in their offices." (Sec. 11.) These are the only sections of the statute of which we are aware bearing upon the question. There is nothing requiring this class of papers to be recorded, and the recording of them, therefore, can give them no additional force or dignity. There is nothing requiring them to be kept in any particular bundle, package, files, desk or pigeon hole. It is the duty of the Recorder to " safely keep and preserve them." Of course, like all other records, they are open to public inspection. The duplicate " shall be filed *by the officer* with the Recorder of the county "—that is, *by the officer making the sale.* This officer has nothing to do with the papers or files in the Recorder's office, and what is meant by the term " shall be filed by the officer " is simply, that he shall deposit the document with the Recorder. This is all that he can do. And this he did, for he " lodged " the duplicate with that officer. This is all that is said in the statute about filing. The County Recorder not only indorsed it " Filed," but he recorded it among deeds, and indexed it. And it was safely kept and preserved, for it was found in his office when wanted on the trial of this cause, some ten years after it was first lodged in his office. He did not, it is true, put it in the files of certifi-

cates of sales—and the law does not require different instruments to be kept by themselves in separate packages. Perhaps a thoroughly methodical man would have so kept them. But he did put it with conveyances—papers relating to the transfers of land. It is said that a party would not naturally look in such a package for it, and might therefore overlook it. But this is an argument *ab inconvenienti* merely. There is still no violation of the duty of the Recorder as prescribed by statute; and it may be replied to this kind of argument that the Recorder went beyond his duty, and took pains to record and index the instrument. This, as before said, gave it no additional force or dignity, but shows that there was no fraud or intended concealment. Its existence, on the contrary, was made as public as possible. Any party seeking to purchase the land affected, would of course look for prior deeds. A party who omits to look for prior deeds will hardly trouble himself to look for certificates of Sheriff's sales. In looking for prior deeds he could not possibly fail to discover the record of this instrument; for it was both recorded and indexed among deeds. He therefore would know that it was, or ought to be, in the office. And with this information to put him upon inquiry, he must, by examination have found it. Besides, section eighteen of the Registry Act makes it the duty of Recorders, on the application of any person, " to make searches for conveyances, mortgages, and all other instruments, papers or notices recorded or filed in their respective offices, and to furnish a certificate thereof, stating the names of the parties to such instruments, papers and notices, the date thereof, the year, month, day, hour and minute they were recorded or filed, the extent in which they affect the property to which they relate," etc. These considerations, at least, constitute a sufficient answer to the *ab inconvenienti* argument. It is not contended that an actual search was made without effect, in consequence of the certificate being placed with one package of papers rather than another, but only that such a thing is possible. But clearly, a reasonably careful examination of the records of the office, with an honest purpose to ascertain

the true state of the title, could not have failed to disclose the encumbrance, and there was no such negligence or malfeasance of the Recorder as to deprive the instrument of the character of a valid record. No case cited to sustain the opposite view presents, in our opinion, anything like a parallel, or even analagous state of facts. We think the certificate was filed by the officer with the County Recorder within the meaning of the statute, and that it thereby became, and continued to be, a public record, of which everybody was bound to take notice, if under the statute such filing imparts notice.

*Filing Sheriff's duplicate certificate of sale gives notice to subsequent purchasers.*

The next question, then, is, does the filing of the duplicate certificate of sale, in the mode prescribed by the statute, impart constructive notice of the estate acquired under it to subsequent purchasers? And, if so, was Hibberd affected with the notice after the expiration of the time for redemption, and before the Sheriff's deed to plaintiff was put on record; or did he cease to be affected with notice of the interest of Rogers at the moment his conditional estate became absolute?

The Act concerning conveyances, which provides a system for the registry of conveyances of real estate, was passed by the first Legislature of California, April 16, 1850. The Civil Practice Act of 1850 was passed on the 22d of the same month. Both Acts were, therefore, before the Legislature at the same time, and were, doubtless, intended to form parts of one harmonious system of statutory law. There was no provision in the Civil Practice Act of that year for a redemption of real property sold on execution. All sales under judgments were absolute. The conditional estate, which we have thus far been considering, had no place in the system of laws then contemplated. Consequently no provision was expressly made in the Civil Practice Act, or in the Act concerning conveyances for recording such certificates of sale, or for in any manner imparting constructive notice of their existence. Upon

a sale under execution a Sheriff's deed was at once executed, and this being a conveyance was embraced within the terms of the Act relating to that subject.

On the 29th of April, 1851, the Civil Practice Act of 1850 was repealed, and a new Act passed for the first time providing for a redemption of real property, when the estate sold under execution is not less than a leasehold of two years unexpired term. Section two hundred twenty-nine of said Act provides, that, when real property shall be sold subject to redemption, the officer making the sale shall give to the purchaser a certificate of the sale, containing a description of the property sold, etc., and "when subject to redemption it shall be so stated, a duplicate of which certificate shall be filed by the officer with the Recorder of the county." No amendment was made to the Act concerning conveyances bearing upon the new estate, and this is the only provision upon the subject. It will be seen that the statute does not define the object, or prescribe the effect of such filing. It cannot be supposed that the Legislature intended this particular provision to be devoid of any consequence. It must be presumed to have been intended to serve some useful purpose, and we can conceive of no useful purpose which it can serve, unless it be to form a part of the general system for the registry of titles to real property, and impart to the world notice of the inchoate and equitable titles of purchasers under execution sales, during a period when they have no conveyance of legal title to put on record. The estate first acquired being only conditional and subject to be defeated, it was, doubtless, thought to be unnecessary to encumber the permanent record books with copies of these instruments designed to serve a temporary purpose, or impose the expense of recording them upon the purchasers, and that filing the certificates would serve the purpose of notice till a redemption, or till conveyances should be obtained and put on record in pursuance of the statutory provisions upon that subject. A statute of Massachusetts, passed in 1848, required the officer in a certain class of executions relating to real property to "cause the

execution with his doings thereon to be recorded in the registry of deeds of the county in which the real estate is situated.' The Supreme Court of Massachusetts held that the object of the statute was to impart notice of the acts of the officer to strangers to the transaction. The Court say : " The Legislature have not declared what was intended to be the effect and operation of this statute, or the consequences which should follow a failure to comply with its requisitions ; but have left them to be ascertained and determined by a just and proper interpretation of its provisions. And, considering it for this purpose, we think it manifestly intended to constitute a part of our general system of registration of the evidences of title to real estate, and that the sole object and design of it, as of former not dissimilar enactments, is to protect subsequent attaching creditors, and persons purchasing in good faith and for a valuable consideration, from the effect of secret and unknown conveyances. In this view it was quite essential, in order to make the system in reference to the redemption of mortgaged real estate uniform and complete. If an open and peaceable entry, not opposed by the mortgagor or other person claiming under him, is made upon the mortgaged premises for the purpose of commencing the process of foreclosure of the right of redemption, it will be wholly ineffectual unless the memorandum or certificate thereof required by law is within thirty days afterwards duly recorded in the registry of deeds for the county where the mortgage is recorded. (Rev. St. C. 107, Sec. 2.) This is constructive notice to all persons who claim by any title acquired subsequently to the mortgage under which the entry for foreclosure is made, and enables them to determine with facility and precision what is necessary to be done for the preservation and protection of the interest which they have acquired in the estate. A like facility was requisite, but before the St. of 1848, C. 144, was wanting, in those cases where a prior mortgagee seeks to foreclose the right of redeeming, by acquiring and retaining possession of the estate by means of an action at law. The object of this statute was plainly to supply that defect. In-

deed, for any other purpose it is wholly useless, and must be entirely inoperative. Constructive notice is unnecessary between the immediate parties to the action, or to the tenant who is turned out by the officer under a writ of possession when he puts in another person in his place. And the reason is that they have actual notice; and therefore the statute was not made on their account or for their benefit. The only person, then, who can derive any advantage from the statute, or whose rights can be in any way affected by it, are subsequent attaching creditors, or purchasers in good faith for a valuable consideration. The rights of redemption are not to be foreclosed without actual or constructive notice. Hence it is made the duty of the officer who serves the writ of execution to cause his doings to be seasonably recorded. If he does not do so, though the possession may be available to the mortgagee against the mortgagor, or such person claiming under him as the real action has been prosecuted against, it will be insufficient to cut off, foreclose or bar the right of redemption belonging to subsequent *bona fide* purchasers, whether in mortgage or in fee, who have not had knowledge of the prosecution of the suit and service of the execution." (*Robbins* v. *Rice*, 7 Gray, 203.)

The case is strictly analagous, and the remarks of the learned Judge are equally applicable to the case in hand. Section two hundred four of the Practice Act provides, that the judgment, from the time it is docketed, shall become a lien on all the real estate in the county for a period of two years. The statute does not say that the docket shall impart notice to strangers of the existence of the lien. Yet it never has been doubted, so far as we are aware, that such is the effect of docketing a judgment. We think the docket does impart notice of the lien, and we do not understand that the respondent's counsel question this proposition. Upon the same principles and rules of construction, we have no doubt that the filing of the certificate of sale by the officer in the mode prescribed by the statute was intended to impart, and

that it does impart, constructive notice of the estate acquired by the purchaser under it.

Upon the second branch of this question we have as little doubt as on the first. Having received from the record constructive notice of the sale to Rogers, and of the conditional estate acquired by him, Hibberd knew, or was bound to know, that at the moment of the expiration of the time for redemption, if no redemption took place, Rogers' equitable estate became absolute, and that thereafter he was entitled at any time to a deed conveying the legal estate. There is no presumption of law that a redemption has been, or will be, made within the time prescribed. The presumption rather is, that a condition of things once shown to exist, continues till some change is made to appear. Hibberd of course knew that he himself had not redeemed. If there were any other subsequent liens upon which a redemption might be had, they were of record, and the record afforded all the necessary means for ascertaining whether a redemption had been made. Nor did Hibberd cease to be affected with notice of what had taken place at the moment the time for redemption expired. He once had notice, and the law knows no forgetfulness. There is no legal oblivion of things once known. There is no provision declaring that matters once made record shall cease to be record. When the record once becomes notice, in the absence of any provision to the contrary, it continues to be notice, at least, while the record exists. The records of Alameda County to-day as much impart constructive notice, that, on the 7th of May, 1855, the premises in question were sold to Rogers under an execution issued on the Smiley judgment, and that, unless redeemed, the conditional equitable estate acquired by Rogers would become absolute, and that the purchaser would be entitled to a Sheriff's deed conveying the legal title at the expiration of six months, as it did at any time during the six months allowed for redemption. It is not evidence that he has in fact got his Sheriff's deed, but under the law it is *prima facie* evidence to all the world that the entire

beneficial estate had vested in him, and that he had become entitled to a conveyance of the legal estate. It is notice, not, it is true, that the purchaser has become invested with the legal title, but of the estate and rights which have vested under the state of facts disclosed by the record. Any other construction would be unreasonable, and render it extremely hazardous for anybody to purchase at all at Sheriffs' sales. In practice it seldom happens that the Sheriff's deed is, or can be delivered at the moment of time when the time for redemption expires, or on the very day when it is due. It cannot be executed and delivered until after the time has elapsed, and, if the world ceases to be affected with notice at the moment the time for redemption expires, there must, practically, be a hiatus between that time and the record of a Sheriff's deed, during which there will be no notice, and when the title of the purchaser is liable to be defeated. Such a condition of things would be greatly to the disadvantage of the debtor and creditor, who are both interested in having the property sell for the highest price. Purchasers would, in bidding, leave a wide margin for the chance of losing the title altogether in consequence of the hiatus in the record notice. On the other hand, subsequent purchasers stand in no danger, if they but take notice of the matters upon the record, placed there expressly for their information, and which the law says they must regard, or suffer the consequences of their neglect. This case may be likened to the voluntary contract of a party to convey at a future day subject to be defeated by a condition already supposed; or a contract to convey at some future day for purchase money already received. Such contracts now are authorized to be recorded, and the record imparts notice to subsequent purchasers. Would it be pretended that the records of such contracts become *functus officio* at the moment of the expiration of the time for the conveyance, when the right of a purchaser to a conveyance becomes absolute, and that thenceforth the parties dealing with the land cease to be affected with notice of the equitable estate actually acquired by the purchaser under the contract, because it is not notice

of the contents of the deed not yet executed and recorded, but which the purchaser is entitled to demand of his vendor? Such a claim would be preposterous.   The record, once made, is notice for all time of the interest evidenced by the instrument recorded.   So of the duplicate certificate of the Sheriff, when it once becomes notice of the interest evidenced by it, by being filed in the office of the Recorder, it continues, so long as it remains a record, to impart that notice.   If it imparts notice at all, it is of the fact that the purchaser has acquired a conditional equitable estate, which will become absolute at the expiration of six months, unless a redemption is effected, and that thereafter the purchaser is vested with the entire equitable estate, together with a present indefeasible right to a conveyance of the legal title; and it does not of itself afford any notice or presumption that a redemption has been, or will be effected.   The case of *Wright* v. *Douglas*, before cited, is authority on this point also.   The Court in that case say that Dana " purchased not only with *constructive*, but actual notice of the rights of his clients."   (2 Coms. 377.) How receive *constructive notice?*   Only by the filing of the Sheriff's certificate of sale.   The Court cite 2 Rev. St., N. Y., p. 370, Sec. 42, but evidently intending section forty-three, to show a purchase with constructive notice.   These sections (42 and 43) contain substantially the same provisions only as section two hundred twenty-nine of our Practice Act.   In the opinion of the Court of Appeals of New York, then, the filing of the duplicate certificate of purchase afforded to the world constructive notice of the interest acquired by the purchaser, and that the notice continued after the expiration of the time of redemption; for, in that case, Dana purchased after the time for redemption had expired.   It is true that Dana had actual notice, but the Court also say, he had constructive notice under the statute.   And such, in our view, is the only reasonable construction.   The Legislature could not have contemplated any possible hiatus between the expiration of the time for redemption and the execution and record of the Sheriff's deed, during which the estate of the purchaser should

be liable to be divested for want of record notice. No sound principle of public policy could require such a condition of things, and no good, but much evil, would be likely to result from it.

But one more point is made, which requires special notice. It is claimed that Rogers, by his purchase and certificate of sale, acquired a mere lien, and that this was lost by the long neglect of the purchaser to enforce it by procuring a conveyance; and it is claimed to be like a tacit lien in admiralty, or a *lis pendens* in a Court of equity, which must be prosecuted with diligence to secure a precedence over third parties. Conceding the doctrine as stated by respondent's counsel to be applicable in the class of cases cited, we have seen that, although the interest of the purchaser may be in a certain sense a lien, yet it is something more than a mere lien, and the principles relied on are not applicable.

But Hibberd purchased on the 17th of November, 1856, and he acquired his interest, if he had any as against Rogers, on that day. This was but a year and ten days after the time for redemption from Rogers' purchase expired. Not a very long period. Hibberd himself did not obtain his own deed for about a year and two months after the time for redemption from his sale expired. Had Hibberd obtained his deed and gone into possession, and neither the plaintiff nor those under whom he claims had been in possession for five years before the commencement of this suit, he might, perhaps, have set up the Statute of Limitations in bar of the action. But no such case is presented, and the Statute of Limitations has not been set up.

If the respondent is to be understood as claiming that according to the doctrines of Courts of equity, Rogers should only be allowed a reasonable time after the expiration of the time for redemption, within which to procure the Sheriff's deed, or to be precluded from availing himself of it; and that by analogy to the Statute of Limitations, four years—the time limited for bringing suit to compel the Sheriff to convey—or at most five years—the time within which an action to recover

real property may be brought—would be a reasonable time, it is sufficient for the present decision to say, that this is a suit at law to recover possession of the land, and that no such equitable defense is set up.   There is no issue upon which the question of undue negligence in delaying to obtain the deed could have been properly determined.   We cannot say from the naked fact that plaintiff's deed was not obtained from the Sheriff till a short time before the commencement of this suit in 1861, that he or his assignor was culpably dilatory.   He may have been during all that time diligently prosecuting a suit against the Sheriff to compel a conveyance.   Or there might have been other legal excuse.   Conceding, then, for the purposes of this case, that the principles of Courts of equity in relation to this subject have any application to a case of culpable delay in procuring a deed from the Sheriff after it is due, there is nothing in this record which would justify us in applying them.

We are of opinion, upon the facts disclosed by the finding in this case, that Hibberd had constructive notice from the record, and was not, therefore, a purchaser without notice of the prior sale to Rogers, and that the plaintiff has the better title.

Judgment reversed, and the District Court directed to render judgment on the findings in favor of the plaintiff for the recovery of the premises and for his costs of suit.


CURREY, C. J., concurring specially:

When the sale was made to William P. Rogers, the statute required the Sheriff, upon a sale of real property under execution, to deliver to the purchaser a certificate of the sale, and also to file with the Recorder of the proper county a duplicate of such certificate.   (Prac. Act of 1851, Sec. 229.)   The Act did not provide what the Recorder should do with such duplicate, other than may be implied from the word "file."   But the Act concerning County Recorders supplied the omission by making it the duty of Recorders to hold the custody of and

safely keep and preserve all papers deposited in their offices. The Recorder in the case before us did have the custody of and did safely keep and preserve the certificate of the sale made to Rogers, and in that respect the requirement of the law was fulfilled, and I do not understand that any Court can properly say in what special manner he was bound to safely keep and preserve such certificates. I agree with my brother SAWYER, that the design of the statute requiring a duplicate certificate in such cases to be filed in the Recorder's office, was to impart notice of the sale to all persons who might be or become concerned to know of it, and also agree that if it became notice it remained notice to subsequent purchasers of the sale already made, and that in this case Hibberd, the subsequent purchaser, had to a legal intent notice of the prior sale to and purchase by Rogers.

I therefore unite with Justices SAWYER and SANDERSON in a judgment reversing the judgment of the District Court and in directing that Court to render judgment on the findings in favor of the plaintiff for the recovery of the premises.

SHAFTER, J., dissenting :

I agree to all the positions taken in the leading opinion save one, and on the ground of such limited disagreement I cannot concur in the reversal of the judgment. The point of dissent is as to the true meaning of the word " file," as used in the two hundred and twenty-ninth section of the Practice Act. Its meaning is to be determined, as I apprehend, with reference to the object which the filing is intended to secure, and to other statute provisions *in pari materia.* The opposite view is that the meaning of the word is to be fixed by the abstract definition of the term, and without the reference named. As between the two methods of interpretation, I do not permit myself to doubt that the one first suggested is the true one. Fortunately, my brethren and myself are in accord as to the object intended to be secured by the filing. It is not the safe keeping of the certificate, but notice to third per-

sons of its existence and contents.    Publicity, then, is the end, and filing the document is the means by which that result is proposed to be secured.    The word "file" carries with it the idea that a minute is to be made on the instrument of the fact that the paper has been deposited in the office of the Recorder, and of the time when such deposit was made.    Read in the light of the admitted purpose, the word further involves the idea that the certificate is to be kept continuously in official custody, or else we are driven to the necessity of holding that it is a matter of legal indifference as to 'where or by whom it is to be kept after it has once been deposited and indorsed; which would be to say that it is of no legal moment whether the filing is to be kept linked to its purpose or not—that is to say, that the law is careless whether its objects are defeated or fulfilled.    That the law is not inattentive to the place in which the certificate is kept within the office, is apparent from the further fact that it is provided by the twenty-second section of the Act relating to Recorders, (Woods' Dig. 609,) that all maps, charts, surveys and other papers on file therein, (the Recorder's office,) shall, during all office hours, be open for the inspection of any person who may desire to inspect them, and may be inspected without charge.    The right of personal inspection is here put as a principal right vested in third persons, and they can claim everything by implication necessary to make the principal right reasonably available. Now if the certificate in this case was put in an unsuitable place, that is, in a place where in fact or by legal conclusion an "inspection" of it would not be facilitated but prevented, or substantially hindered instead, the paper would be thereby severed from its end, and the legal antecedent, to notice by construction, would utterly fail.    Though we cannot determine, as a general thing, what would be suitable places in which to keep files in Recorders' offices at large, or in the office of any given Recorder, still on the facts of this case we know as matter of law where the suitable place was for keeping the certificate in question.    The case finds in effect that files of that class were kept in a particular place within the

office, and that the certificate in question was neither kept in that place nor put there in the first instance. The paper was therefore out of relation to the appointed purpose from the beginning, and the case is stronger by that much than it would have been if the paper had once been brought into connection with the object, and the connection had been broken by a subsequent removal of it from the office, or by shifting its position within the office to other than a suitable place. I apprehend, therefore, that we can say in this case that the suitable place for keeping the certificate in question was the place at or in which certificates of sale were kept, according to the habit or custom of the office in which it was lodged, and that every other place, how suitable soever it may have been for the purpose of preserving the paper as such, was unsuitable for the purpose of facilitating inspection of it by third persons, and therefore legally unsuitable as a basis upon which to raise a presumption that the defendant had notice of the existence and contents of the certificate. The custom of the office referred to must be presumed to have been known to the public, and the defendant had a right to expect that the custom would, and a right to claim that it should be adhered to in this instance for his advantage. The circumstance that the defendant had the right to inquire of the Recorder concerning the existence of a certificate of sale of the land in question, and a right to claim true replies, does not in my judgment vary the result; for that right is no part of the basis upon which notice by construction arises—nor is it in itself evidence of notice in fact. Nor is it of any avail to say, if the certificate was put and kept in any unsuitable place, that the fault was not that of the party, but of the Recorder, and that the plaintiff therefore ought not to be deprived of the benefit of the statute presumption. But that position cannot be held in view of the decision in *Chamberlin* v. *Bell*, 7 Cal. 292. The question there was whether the record of a prior deed, the record not being a true copy of the original in the matter of the land conveyed, operated as a notice to a subsequent purchaser. It was argued that the mistake was the mistake of

the Recorder, and not of the grantee in the deed, and that notice therefore should be intended nevertheless. But the Court considered that the basis of the presumption was artificial—a statute creation—and that if the prescribed ground failed, the presumption failed, without reference to the cause of the false registration or to the question of who was responsible for it. The decision is fully sustained by *Sanger* v. *Craigue*, 10 Vt. 555; *Jennings* v. *Wood*, 20 Ohio, 266; *Frost* v. *Beekman*, 1 John. Ch. 288. For these reasons I think the judgment should be affirmed.

Mr. Justice RHODES expressed no opinion.