## McWILLIAMS *v.* WITHINGTON.

*(Circuit Court, D. Nevada. May 9, 1881.)*

1. **TIME PURCHASE FROM STATE—SALE—EXECUTION.**
    The interest which a person has under a time purchase from the state, while the contract remains in force, is property subject to sale upon execution.

2. **SAME—RIGHT OF PURCHASER.**
    The purchaser at such sale has a right to make the annual payments and perfect the title.

3. **SAME—DUTY OF MORTGAGOR.**
    In the absence of any false representation as to the extent of his interest or contract, at the date of the mortgage under which the property is sold, it is not the duty of the mortgagor to perfect the title by making the annual payments.

4. **SAME—FAILURE OF TITLE—REMEDY.**
    The proper remedy of a purchaser at execution sale is by motion in the same suit, in case of a total failure of title.

5. **SAME—SAME.**
    Section 1300 of the Compiled Laws of Nevada is a rule of decision.

*Kirkpatrick & Stephens,* for plaintiff.

*Robert M. Clarke,* for defendant.

HILLYER, D. J. This is a motion to vacate the satisfaction of judgment entered herein, set aside the sale, and revive the judgment to the extent of $4,000. It is based upon a petition, and by agreement of counsel has been submitted upon the petition and the answer thereto. The petition presented a case of total failure of title, and a demurrer to it was overruled. The answer makes the following case, which is agreed to as true:

The property was sold by the marshal, September 3, 1879, and at that time Withington, the defendant, had entered into a time contract with the state of Nevada, under section 3820 of the Compiled Laws, for its purchase, and had made at least one annual payment. The contract was still in force. McWilliams bought the property for $4,000, and, on receipt of $2,000 in addition, entered satisfaction of the whole judgment on October 9, 1879, and in March, 1880, received the marshal's deed. On November 17, 1879, no annual payment having been made by either McWilliams or Withington, the state, as it had a right to do under the law, sold the lands to other parties and issued patents about December 16, 1879; so that at the date of the marshal's deed Withington had no interest in the property.

The petitioner avers that he has been unable to obtain possession " by reason of the fact that said Withington had no title or interest therein or thereto, and the same was not subject to sale as the property of said Withington."

The interest which a person has under a time purchase from the state, while the contract remains in force, is, in my judgment, property subject to sale upon execution. It is such an interest as the supreme court of Nevada describe in *Barnes* v. *Sabron*, 10 Nev. 240, as follows:

" To this land he (plaintiff) has the beneficial estate or interest, as well as the possession, and as such equitable owner and actual possessor is entitled to enjoy all the incidents to the land (a water right) and its ownership, as well as the land itself."

And in *Page* v. *Rogers*, 31 Cal. 306, it was held that, both before and after the time for redemption had expired, the purchaser at an execution sale had an equitable estate which could be seized and sold on execution. Lands in the new states have always been held to be taxable by the state before they are patented, if they have been purchased from the United States.

"And, indeed," says Mr. Justice McLean, in delivering the opinion of the supreme court in *Carrol* v. *Safford*, " in Ohio, under the credit system, lands were taxed after the expiration of five years from the time of their purchase, although they had not been paid for in full." 3 How. 459. See, also, *People* v. *Shearer*, 30 Cal. 648, and cases cited; *Witherspoon* v. *Duncan*, 4 Wall. 219; *Hughes* v. *U. S.* 4 Wall. 232; *U. M. & Manuf'g Co.* v. *Dangberg*, 2 Sawy. 455.

At the date of this sale by the marshal Withington had entered into a contract with the state of Nevada for the purchase of this land. The price was agreed upon, and he had paid a portion of the purchase money, and was to pay the rest in annual instalments, and to have a deed upon making the last payment. He had the actual possession, and was in receipt of every benefit which would have come to him from full ownership. That he had a valuable interest in the land it needs no argument to prove. He or his successor in interest was the only man in the world, so long as he kept the contract in force, who had a right to make the payments and preserve his interest. To the extent of his payments already made he had a pecuniary interest, which would increase each

year until the contract was performed and the patent delivered. At the close, and after he had fully paid for the land, but had not received his patent, he would still have but the equitable title, but it would be such an equitable title as virtually to constitute him the owner. The difference between his position then and before, while his contract remained in force, was in degree only. He had purchased the land, and had agreed to pay the price in instalments. So long as he lived up to his agreement he was entitled to the possession, and the whole beneficial ownership. *Barnes* v. *Sabron, supra.*

If Withington had a vendible interest at the date of the sale, as I think clear, and there was no fraud,—and we cannot, in the absence of proof, presume any,—the whole matter is narrowed down to this question: whether it was the duty of Withington to continue to make payments to the state after the sale, and, if not, did the right to do so pass by the sale to the plaintiff, McWilliams?

In the absence of any misrepresentation on the part of the defendant as to the extent of his interest at the date of the mortgage, I cannot see upon what principle he would be bound to go on with his annual payments. So long as the property remained his under the contract it would be of interest to him to pay the instalments as they fell due; but after the property was sold the case would be different. I do not see that he would be any more bound to continue the payments than in case he had assigned his interest in the contract voluntarily. And clearly, in that case, it would take a new personal contract on his part at the time to enable his assignee to compel him to make the payments. McWilliams purchased at the execution sale his interest in the land, which included the right to complete the payments himself and thus perfect the title. He succeeded to the interest of Withington and nothing more. The right of McWilliams, the purchaser at the marshal's sale, to go on and carry out the contract with the state seems to follow as a necessary deduction from the finding that the interest of Withington was subject to sale under execution.

Where there had been a sale of land under execution by a

mistaken description, of which land the debtor, Bouse, was, and for a long time had been, in possession, it was held that the purchaser had an equity which could be enforced by proper proceedings, and that, whenever a party is in such a situation as to be entitled to call for a specific performance, he then has such an interest as may be transferred by execution sale.

"And as a matter of course," says the court, "when the law once annexes to the debtor's interest in land the incident of transferability, it must manifestly follow that the purchaser will immediately succeed to and occupy the *status* of him whose estate the sheriff's deed purports to convey; otherwise the statute respecting execution sales would be utterly inoperative, so far as regards equitable interest in land." *Morgan* v. *Bouse*, 53 Mo. 219.

In *Hodges* v. *Saunders*, 17 Pick. 470, it was held that the benefit of an agreement, made by the defendant in the nature of a covenant for further assurance, passed with the estate to the purchaser. The sale was an official sale by an administrator for the payment of debts, and the estate passed solely by force of the statute, and not by reason of any interest the grantor [administrator] personally had in it. An assignee under a sheriff's sale is the assignee of the original party,—as much so as if the latter had assigned to him directly. *McCrady* v. *Brisbane*, 1 N. & M. 104; *Redmine* v. *Brown*, 10 Ga. 311.

In *White* v. *Whitney*, 3 Met. 81, it was held that the purchaser at sheriff's sale of the equity of redemption of a mortgaged estate buys the whole estate, subject to the mortgage, and a covenant that the premises are free from encumbrances passes to him. For the breach of this covenant he may have an action.

" It was," says the court, "a covenant incident to the estate made for its security and protection, beneficial to the person to whom the estate should come, but to no other. It was part of the debtor's right, title, and interest in the premises."

The legal effect and operation of the sheriff's deed was to transfer this covenant to the purchaser. When the covenant runs with the land it is immaterial whether it pass by deed from the grantee or by a sheriff's deed. The grantee in the

sheriff's deed is as much the assignee of such a covenant as though the conveyance were made by the covenantee himself. *Carten* v. *Ex'r of Denman*, 3 Zab. 271.

It seems to me there is a clear analogy between the case at bar and these just cited. In *Page* v. *Rogers, supra,* at page 306, in illustrating the similarity between a voluntary vendor for cash with a covenant to convey in six months and a defeasance back, and an involuntary sale of a debtor's interest in land with a right to redeem, the court said:

"In the case of the voluntary vendor, as well as of the judgment debtor, other parties, by purchasing his interest under executions or upon voluntary sales, could acquire his interest and defeat the estate of the vendee by performing the conditions, as well as in the case of redemptioners under execution sales."

Thus, whenever it is determined that a debtor has an interest in land which is subject to seizure and sale under execution, then the marshal's certificate of sale transfers the whole of that interest to the purchaser, of whatsoever nature, legal or equitable, it may be. If equitable, the purchaser acquires a right to do those things which are necessary to preserve the estate. In this case, McWilliams purchased a valuable estate in the land, and he got all he purchased at the sale. If he failed to complete the payment and perfect the title it was his own fault. The law (section 3820, Comp. Laws) is framed with a view to transfers of interest during the continuance of the contract. It is provided that "when full payment shall have been made patents shall issue to the *purchaser, his or her heirs or assigns.*" I think, then, that Mc-Williams, after the purchase by him of Withington's interest, was subrogated to him in respect to this time contract, and had an undoubted right to make payments thereon.

It is still insisted that the remedy in a case like this ought to be sought by action and not by motion. It is of little importance now, for the motion must be denied. I examined the matter very carefully when the demurrer was decided, and, if the case made here were as stated in the petition, should see no reason to doubt the correctness of my former conclusion. This is a proceeding of an equitable character,

—the vacating of the order of satisfaction,—and is between the original parties; no rights of third parties have intervened. 2 Jones, Mort. 1668.

I think, too, as was held in passing upon the demurrer, that section 1300 of the Compiled Laws of Nevada, which gives a remedy by petition to the purchaser at execution sale, on failure of title, etc., is a rule of decision, and that we are bound to carry it out so long as the remedy provided is substantially in accordance with the modes of equity procedure.

Motion denied.

SAWYER, C. J., concurs.