## GUILLERMO ABADIE v. JOSÉ LOBERO, CLARA COTA LOBERO, His Wife and THOMAS B. DIBBLEE.

SALE ON EXECUTION—A REDEMPTIONER.—If A. enters into a contract with B. to pasture for B. a stated number of cattle for a given number of years, and, to secure the fulfillment of the contract, executes to B. a mortgage on his land, and a judgment is afterwards recovered against B., on which an execution issues, and a sale is made of B.'s cattle so being pastured on said land, such sale does not give to the purchaser of the cattle a title to the contract and mortgage, nor does it make him a redemptioner, if the land is sold on a prior mortgage.

REDEMPTION OF LAND SOLD BY SHERIFF.—If a purchaser at Sheriff's sale treats one not entitled to redeem as a redemptioner, recovers from him the redemption money, and gives a certificate of redemption, the most that such party so claiming to redeem can acquire by the transaction is the interest of the purchaser *as* purchaser. He acquires no title to the judgment under which the sale took place.

EFFECT OF REDEMPTION OR ASSIGNMENT OF CERTIFICATE OF SALE.—A purchaser at Sheriff's sale does not by such purchase acquire any interest in the judgment upon which the execution or order of sale issued, or the debt or mortgage upon which the judgment was rendered; nor does a redemptioner, as such, or an assignee of the certificate of sale, when the purchaser was the plaintiff, acquire any interest in such judgment, debt, or mortgage.

PLAINTIFF IN SUPPLEMENTAL BILL IN FORECLOSURE CASE.—Neither a purchaser at Sheriff's sale, as such, nor a redemptioner, either before or after redemption, nor an assignee of the Sheriff's certificate of sale, upon his own *ex parte* motion, made in his own name, is entitled to have the judgment upon which the execution or order of sale issued vacated and himself substituted as plaintiff, in order that he may file a supplemental complaint to bring in other parties.

WHEN PURCHASER BOUND BY JUDGMENT OF FORECLOSURE.—One who purchases land pending an action to foreclose a mortgage on it, or after final judgment, with notice of the pending action or of the judgment, is bound by the judgment. If no notice of *lis pendens* has been filed, and he purchases without notice, after the entry of default, but before final judgment, he is not bound by the judgment, even if a final judgment gives constructive notice to parties dealing with the subject matter.

PENDENCY OF ACTION.—An action is pending after default and until final judgment is entered.

SALE OF LAND PENDING SUIT TO FORECLOSE.—If the defendant in an action to foreclose a mortgage, in which no notice of *lis pendens* has been filed, sells the mortgaged premises before final judgment, and the purchaser buys without notice of the pendency of the action, and then sells after the entry of final judgment, the second purchaser is in no worse position than his grantor as to being bound by the judgment.

APPEAL from the District Court, First Judicial District, Santa Barbara County.

The facts are stated in the opinion of the Court.

*Williams & Thornton,* for Appellant.

Dibblee having bought after final judgment in the action brought by Temple, by operation of law he had notice of the final decree in that action. Such is the decision of the former Court of this State in *Grattan* v. *Wiggins*, 23 Cal. 16. Dibblee purchased after a final decree. In the case just cited (see 23 Cal. 38) it is held that section twenty-seven of the Practice Act, in regard to notice of *lis pendens*, "applies only to actions pending, and not to judgments and decrees rendered, which at common law, it would seem, were notice to all persons." (See cases cited in same case, page thirty-nine, on this point.) If this position be correct, Dibblee, having purchased after final decree and while the action was pending, was by force of law affected with notice of all the proceedings in the action brought by Temple against Olivera and wife, and could not be held to aver anything to the contrary. Indeed, the referee does not find that he did not have notice when he (Dibblee) purchased.

Now, the other party (Lobero's wife) purchased forty-six days after the judgment by default was taken on the sixth day of November, 1865, and we contend that the same rule applied to her. The entry of judgment by default on that day was the beginning of judgment. (See Prac. Act, Sec. 150.) And by force of law, if that is the case, Clara Cota de Lobero must stand charged with notice.

The final decree related back to the default, and became a part of the judgment, and gave notice to all persons dealing with the mortgaged premises. The doctrine of relation is expounded in *Landes* v. *Brandt*, 10 How. U. S. 372.

But whether charged or not with notice of the proceedings in the action of Temple, the purchasers had notice of his mortgage, which was recorded; and whether the appellant is held to be a redemptioner or purchaser from Temple, he is alike entitled to relief. If he is a redemptioner, he is subrogated to the rights of Temple. (Prac. Act, Sec. 232.) If he is a purchaser, he is alike subrogated to the rights of Temple. By paying the full amount of the judgment as a subsequent mortgagee, or his successor in interest, he is entitled to an assignment of the judgment, mortgage, note, etc., and all the rights of said Temple. A Court of equity would regard him as such assignee, for the facts found show that such was the intention of the appellant Abadie—to obtain all the rights of Temple. A Court of equity, for the purposes of justice, regards that as done which ought to be done. See the following cases on equitable assignments: *Daggett* v. *Rankin*, 31 Cal. 322; *Racouillat* v. *Sainsevain*, 32 Cal. 376; *Decker* v. *Kernan*, 2 Kern. 361; *Love* v. *S. N. L. Co.*, 32 Cal. 649–653. In *Averill* v. *Taylor*, 4 Selden, 54, it is held that upon the redemption of a mortgage the redeeming party has a right to an assignment of the mortgage redeemed, and if it be recorded, a right to require the mortgagee to acknowledge the assignment.

If, then, the appellant, Abadie, is the assignee in law of the rights and remedies of Temple, he is entitled, under the decisions of this Court, to have the decree opened that he may make the proper parties defendant, to have the sale set aside, and the Temple mortgage and his own (if anything is due on it) foreclosed as to all the defendants; and this is what he is trying to do. Such is the decision of the former Supreme Court in *Goodenow* v. *Ewer*, 16 Cal. 461. This decision was again upheld in *Boggs* v. *Hargrave*, 16 Cal. 559, and approved in *Heyman* v. *Lowell*, 23 Cal. 106–108.

*Patterson, Wallace & Stow,* for Respondent.

Abadie was not a statutory redemptioner at the time he undertook to redeem from Temple. If he was a redemptioner, he was made so by the purchase of the cattle on execution sale. He did not buy the contract for pasturing them, nor the mortgage given to secure the contract. The notice given by John Temple to the Sheriff that Guillermo Abadie had redeemed from the sale of February 6th, 1866, did not constitute Abadie a redemptioner. The payment of the money to Temple had just the same legal effect, so far as it bore upon Abadie's character and right as a redemptioner, as though the money had been paid to the Sheriff himself. The payment directly to Temple is made by the statute equivalent to a payment directly to the Sheriff for the benefit of Temple. (Prac. Act, Sec. 233.) The payment or deposit of the money with either Temple or the Sheriff was necessary, but it was not all that was necessary; the relation to the property to be redeemed which the statute prescribes could not be supplied by the mere payment of money, and we have shown that Guillermo did not occupy that relation to the mortgaged premises.

Appellant's counsel seeks to rest this proceeding upon the series of cases in this Court commencing with *Goodenow* v. *Ewer,* and *Boggs* v. *Hargrave,* 16 Cal.

It will be seen that the "supplemental complaint" is not drawn upon the theory of relieving a purchaser of property when there has been an insufficient foreclosure. The plaintiff does not aver that the foreclosure formerly had in the Temple case is insufficient, nor that there was any mistake. He sets up the decree in the Temple case, and claims that he redeemed from the sale under it; he does not claim to be or to become the assignee of the note or mortgage to Temple, nor the assignee of the decree itself; he avers that he obtained "the requisite Sheriff's deed;" he claims that the defendants confederated to defeat that decree, and, as

50

we have seen, then abandons that charge on the trial. The remainder of the bill is taken up with the averments upon which he seeks to foreclose the other mortgage given to "Domingo Abadie & Brothers."

By the Court, SAWYER, C. J.:

On the 31st of October, 1859, Mariano Olivera executed a note in favor of John Temple for eight hundred dollars, and to secure it at the same time jointly with his wife, executed a mortgage on the "Rancho La Gaviota." Afterward, on the 20th of March, 1861, said Olivera and wife entered into a contract with Domingo, Juan, and Marcelina Abadie, under the firm name of Domingo Abadie & Brothers, to pasture for said Abadie & Brothers, on said rancho, for two years, a large number of cattle, and to secure the performance of said contract to pasture on the part of Olivera and wife, they also executed a mortgage on said "Rancho La Gaviota." In the month of April, 1864, William Abadie recovered a judgment against said Abadie & Brothers, for twenty-six thousand dollars, and, under an execution issued on said judgment, had sold, and himself purchased in for two hundred dollars, the cattle of the defendants, which were at the time being pastured on said rancho under said contract, but there was no seizure or sale under said execution of said contract to pasture. The cattle, only, were sold. On the 10th of August, 1865, Temple commenced suit to foreclose his mortgage against Olivera and wife, making William Abadie a party, as claiming some interest in the premises. Service was had on Olivera and wife, but not on Abadie, nor did he appear. No notice of *lis pendens* was filed. On the 6th of November, 1865, the default of Olivera and wife was entered. On the 22d of December, and before entry of judgment, Olivera and wife by deed, duly acknowledged and recorded, conveyed the mortgaged premises, for a valuable consideration, to defendant Clara Cota Lobero, without notice of the pendency of the foreclosure suit. On the 25th

of December, 1865, a final judgment, directing a sale of the mortgaged premises, was entered in said suit of Temple, and on the 6th of February, 1866, the mortgaged premises were sold under the judgment to Temple, the plaintiff in the suit. On the 30th of April, 1866, Clara Cota and her husband, José Lobero, by deed duly recorded, conveyed said premises for the full cash value to defendant Dibblee. On the 16th of February, 1866, the present plaintiff, William Abadie, claiming to redeem as owner of the mortgage given to Abadie & Brothers, to secure the contract for pasturage, paid to Temple the full amount of his judgment, which Temple accepted, and thereupon gave to said Abadie a notice in writing, addressed to the Sheriff, stating that William Abadie had redeemed the premises sold, by paying the full amount required by law for such redemption. Afterward the Sheriff executed a deed of conveyance to said William Abadie in pursuance of the sale and direction of the judgment. On the 30th of June, 1866, Temple died. Abadie applied for a writ of assistance to obtain possession, which was successfully resisted by defendant Dibblee. On the 26th of July, 1866, an order in the case of *Temple* v. *Olivera et al.* was entered, reciting the death of Temple—that Temple in his lifetime had transferred all his interest in the action to William Abadie, and that it was necessary to open the judgment and make Lobero and wife and Dibblee parties, in order to determine their rights, and directing the said judgment to be opened, that the said William Abadie be substituted as plaintiff, and that Lobero and wife and Dibblee be made defendants. Thereupon, said Abadie, as plaintiff, filed a supplemental complaint against Lobero and wife and Dibblee, in which he alleged, among other things, the proceedings herein stated, and that the conveyance to the wife of Lobero and to Dibblee were fraudulent, and prayed for a writ of assistance, and, if that could not be had, for a judgment foreclosing the mortgage against all the parties, for sale of the premises, and application of proceeds to payment of the judgment, and a personal judgment against Olivera for any

deficiency. The charge of fraud seems to have been abandoned. The referee found, among other things, the facts above stated, and that the action ought to be dismissed as against Dibblee and Lobero and wife, and that Abadie was not entitled to any relief against any of the defendants. Judgment having been entered in pursuance of the findings, Abadie appeals from the judgment.

That William Abadie was not a redemptioner within the meaning of the statute is clear. He was not a judgment creditor of Olivera and wife, nor does it appear that he had any lien whatever upon the premises sold. It is not pretended that he had any, unless he in some mode acquired the mortgage given to Abadie & Brothers to secure the performance of the contract to pasture cattle, and it is not shown or claimed that he acquired that contract, unless it passed to him by virtue of the sale of the cattle under the execution issued upon the judgment in the case of *William Abadie* v. *Abadie & Brothers.* But the levy upon and sale of the cattle passed no interest whatever in the pasturage contract or the mortgage given to secure it. The specific cattle and the pasturage contract had no necessary connection. They were wholly distinct and independent classes of property. After the sale of the cattle, the contract to pasture a given number of cattle might still have been valuable to Abadie & Brothers, for they might have had or obtained other cattle, or sold their interest in it to others who had cattle. There was no levy of the execution upon, or sale of, their interest in the contract as such, and the seizure and sale of the cattle alone no more passed an interest in the contract, than a sale or assignment of the contract would have passed the title to the cattle. The plaintiff in the supplementary proceeding, therefore, had no right to redeem. But Temple recognized, and in all respects treated him as a redemptioner, accepted his money, and gave him a certificate of redemption addressed to the Sheriff; and it may be conceded, for the purpose of this opinion, that, since Temple was satisfied and treated the redemption as valid, it was good, or, if not good

as a redemption, as between these parties, amounted to an assignment of the certificate of sale. This is the most that can be claimed, for neither party contemplated any other transaction than a redemption. Abadie claimed the right to redeem, paid his money in the character of a redemptioner, and supposed he was redeeming. Temple recognized that view, accepted the money on the theory that it was a redemption, and gave a certificate that a redemption had been made, in order that the Sheriff, upon the expiration of the time allowed for others to redeem, might execute the proper deed to the redemptioner. The only rights acquired, then, contemplated by either party, were such as a redemptioner acquires by virtue of a valid redemption from a purchaser at a Sheriff's sale. That is to say, he acquired the rights of purchaser, as purchaser, which is an inchoate title to the interest in the land which was sold. When a redemptioner redeems the sale is not vacated, terminated, or in any way affected. No new sale takes place, but, on the contrary, when the time for further redemption expires, the Sheriff's deed is made to the redemptioner instead of the original purchaser. The effect of such a redemption, as between the purchaser and redemptioner, is precisely the same as though the purchaser had assigned the certificate of sale. The only difference in the consequences relates to the redemptioner and others, also having a right to redeem. The purchaser acquires an equitable title to the interest sold, subject only to be defeated by a redemption, which title will become perfected by lapse of time, if no redemption is made, without any other act than the execution of the final conveyance of the Sheriff. (*Page* v. *Rogers,* 31 Cal. 301.) The redemption by a judgment creditor, or mortgagee, passes the title acquired by the purchase to the redemptioner, subject only to further redemptions. He gets this title, and no more. He acquires no title to the judgment under which the sale took place, or to the demand upon which it is recovered, or to an undivided part of the judgment, when the whole amount of the judgment is not bid. This would, certainly,

be the case where the purchaser, from whom the redemption is made, is an entire stranger to the suit. It would not be pretended that a stranger purchasing land under a judgment and execution, by virtue of his purchase also becomes the owner of the judgment, or of an aliquot part of the judgment, corresponding to the amount of his bid. He simply buys the land, and nothing more. So, when the plaintiff in the execution buys in the property, as purchaser he acquires the same interest as any other purchaser, and no more, and a party redeeming from him acquires his interest as purchaser, and no more; that is to say, he gets by the redemption the interest in the property sold which passed by the sale. He in no sense becomes the owner of the judgment, or the demand upon which the judgment is recovered, nor of any part of it.

A purchaser at a Sheriff's sale, under a mistake of fact, may, in a proper case, have the sale set aside and be released from the purchase. But we are not aware of any rule of law which puts the purchaser as such in the place of the judgment creditor and gives him the control of the suit in which the judgment under which the sale was made was recovered; *a fortiori* there would be no such rule in favor of the vendee or assignee of the purchaser. In this case the present plaintiff, Abadie, by virtue of his redemption, or virtual assignment of the certificate of sale, acquired, at most, the interest of Temple in the land as purchaser, only, and not his interest in the judgment and debt, upon which it was based. If he is entitled to have the sale vacated, we do not see upon what principle he can claim to be the assignee or successor in interest in the judgment, and as such be substituted as party plaintiff for the original plaintiff. If there is any authority for such a proceeding, it has not been brought to our attention. The cases referred to, where judgments have been opened as well as the sales set aside, are cases where the plaintiff in the suit and not the purchaser, has applied to have the judgment opened. There are cases where purchasers under a mistake of facts, and under

mistake of law, have been relieved from the purchase on their own application, but we know of none where the purchaser, by virtue of his purchase alone, has not only been relieved from the purchase, but substituted for the plaintiff in the case, and had the judgment opened and the case further prosecuted in his own name.    It is true a *dictum* is found in *Boggs* v. *Hargrave*, 16 Cal. 566, to the effect that upon the application of a purchaser, the Court may not only direct the sale to be set aside and the satisfaction cancelled, but also "authorize a supplemental bill for a resale of the premises to be filed and conducted in the names of the complainants in that suit," for the benefit of the purchaser, but no authority is cited for the latter proposition, and none, going so far, has fallen under our observation.    *Fowler* v. *Harbin*, 23 Cal. 630, decides nothing affecting the question. Concede it to be so, however, for it is unnecessary to decide the point now, there is nothing stated in the case to sustain the position that the purchaser may, without notice to the original plaintiff, or his legal representatives, in case of his death, have the judgment opened and himself substituted as plaintiff, and thenceforth proceed as though he were the plaintiff and sole party in interest.    Such was the course adopted in this case.    The original plaintiff died, and without even making his representatives parties, or notice to them, the present plaintiff, on his own application, had the judgment opened and himself substituted as plaintiff, filed a supplemental complaint, and then proceeded, without the prior plaintiff or his legal representatives, to prosecute the proceedings as though he was the only party entitled to be heard.    We think the whole proceeding irregular, under any view, without making the representatives of Temple parties, and that the judgment upon the supplemental complaint is correct.

We do not perceive how the point made by appellant as to whether Lobero and wife, or Dibblee, had notice of the proceedings in the foreclosure suit can aid him, if sustained. If they purchased pending the action or after final judgment,

with notice, the judgment is binding upon them, and there is no ground for setting aside the sale, or opening the judgment. But the referee finds that the wife of Lobero took without notice, and we think the action was still pending after default, and until final judgment was entered. The doctrine of relation, invoked, has no reference to a case of this kind. If it did, the first act of the series, resulting in the final judgment, is the filing of the complaint, and the final judgment might as well relate to that act as to the entry of the default in the Clerk's office, preliminary to the action of the Court in ascertaining the amount due, and ordering final judgment. If it be admitted, then, that final judgment affords constructive notice to parties dealing with the subject matter, without the filing of a notice of *lis pendens*, there was no final judgment, and the action was still pending when at the date of the conveyance to Clara Cota, wife of Lobero. Dibblee is in no worse position than his grantors.

The judgment must be affirmed, and it is so ordered.

CROCKETT, J., concurring specially:

I concur in the judgment.

On motion for rehearing, the Court, by Mr. Chief Justice SAWYER, delivered the following opinion:

It may be conceded that, in an action to foreclose a mortgage by the indorser of a note and assignor of a mortgage made to secure it, regularly transferred in the ordinary course of business, it would not be necessary to make the mortgagor and assignor a party; for, if this be so, as it undoubtedly is, it by no means follows that the mortgagee would not be a necessary party to a suit by one claiming to establish against him, as the basis of his title to foreclosure, a right to be regarded as an equitable assignee upon a state of facts which gives him no title at law, and no right that can be recog-

nized, except as it may be established in, and worked out through the aid of, a Court of equity. But the question in this case is not, who would be proper parties in an original suit brought by Abadie to foreclose a mortgage assigned to him; nor whether, with the assent of Temple, the judgment might be opened and a supplemental complaint filed and prosecuted in his name, as suggested in *Boggs* v. *Hargrave;* nor whether, if, after having received the money upon a claim by Abadie to redeem under the statute, and recognize the redemption, Temple refused to allow the use of his name for the purpose of opening the judgment and further prosecution of the suit, the Court would compel him, in a proper proceeding, to assign his demand and judgment to Abadie, or to allow the use of his name, or would grant relief in an independent action against Temple and the mortgagors and their grantors, setting up such refusal of Temple as an excuse for not proceeding in his name in the original suit. The appellant has not presented himself in such a way as to make it necessary to determine any of these questions. Standing as he does, viewing his right in the light most favorable to himself, in the position of a mere statutory redemptioner from a sale on execution, or of an assignor of the certificate of sale, we suggested some difficulties in respect to his obtaining relief of the kind here sought. But we decided the case on the ground that the plaintiff was not entitled to vacate Temple's judgment, and seek the relief in his own name in Temple's suit, through a proceeding to which Temple and his representatives are total strangers.

The case, in short, is this: Temple brought suit against the mortgagors to enforce his mortgage lien, making Abadie a party defendant, but without serving him; so that Abadie, in effect, though named as *defendant* in the complaint, was no party to this action; and the suit was between Temple, as plaintiff, and the original mortgagors, as defendants. Final judgment was entered in favor of Temple, ordering a sale of

the mortgaged premises, and a sale was accordingly had, and Temple became the purchaser. This is all there is of the proceeding in the case to which Temple or his representatives was ever a party. Temple died, leaving the matter in this condition, so far as anything appears in a form having any binding force on him or his representatives. After his death, upon an *ex parte* application of appellant, Abadie—a stranger to the action—the judgment was vacated, and Abadie substituted *as plaintiff.* We say *ex parte,* because Temple, the sole plaintiff in the case, was dead, and nothing had been done to bring in his representatives. Lobero and wife and Dibblee—the latter being the only defendant who then had any interest in the premises, and all of whom had become interested in the property, without notice, pending the action—had not yet been made parties to the suit; and the original defendants, who, at that time, had no interest in the land, do not appear to have been notified. After thus obtaining *ex parte* a vacation of the judgment, and an order substituting himself as plaintiff, Abadie filed what he calls a supplemental complaint in his own name against defendants Lobero and wife and Dibblee, alleging the conveyance by the mortgagors of the mortgaged property to them successsvely *pendente lite,* and that he himself had redeemed from Temple, and acquired his interest. He then introduces as a new cause of action another subsequent mortgage from the original mortgagors, Oliverez and wife, to third parties, which he claims to have acquired through certain other proceedings, and seeks to have this foreclosed. He also alleges a conversion by Oliverez and wife of one hundred twenty-three head of steers, one hundred seventy-seven head of breeding cows, and fifty calves, of the value of seven thousand dollars, the value of which he seeks to recover, and have the amount satisfied out of the proceeds of the mortgaged premises. In short, without noticing various other singularities, the whole proceeding shown by the record is a legal curiosity—a novelty in judicial procedure.

This entire proceeding is utterly void as to Temple and his representatives. Abadie is an intruder into Temple's action, after he has obtained a judgment. Temple and his representatives are in no way affected by his action. The facts upon which Abadie seeks to base his claim might be shown by Temple to be fabricated. At all events, Temple has not been heard, and is not affected by the proceeding, and the defendants would not be protected as against Temple's representatives, by any judgment that might be rendered in the case. The original judgment, and, of course, all proceedings under it, were vacated, and a new plaintiff has assumed control. The next judgment, including accumulating interest, may be for a much larger sum, and the question might arise, who is entitled to the excess over the former judgment? Appellant has improperly and illegally thrust himself into Temple's suit, and he has no right to manage or direct it, or to any relief in it, under the circumstances in which he presents himself. If this proceeding should be sanctioned, there is no judgment rendered that could not be vacated, and the original plaintiff displaced, upon an *ex parte* application of a stranger and intruder, and there would be an end to everything like an orderly administration of justice. For aught that appears, Temple's representatives are ignorant of this proceeding to the present day. After Temple's death, no valid movement in the case adverse to his interest could be made without bringing in his representatives and giving them an opportunity to be heard—certainly none that should displace him as plaintiff in the action.

Rehearing denied.

Mr. Justice CROCKETT dissented, and Mr. Justice SPRAGUE expressed no opinion.